5 P.2d 466

**ST. JOSEPH REGIONAL MEDICAL CENTER, Petitioner–Respondent,**

v.

**NEZ PERCE COUNTY COMMISSIONERS, Respondents–Appellants.**

No. 25168.

Supreme Court of Idaho,
Moscow, April 2000 Term.

June 29, 2000.

Lynnette L. Ehler, Lewiston, argued for appellants.

Clements, Brown & McNichols, Lewiston, for respondent. Bentley Stromberg argued.

WALTERS, Justice.

The Nez Perce County Commissioners appeal from the district court's decision reversing the Board of County Commissioner's denial of medical indigency benefits for payment of mental health services provided by St. Joseph Regional Medical Center (SJRMC) to patient B.T. We likewise reverse the Board's order.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

At approximately 5:00 p.m. on June 30, 1996, B.T. was examined in the emergency department at SJRMC where she appeared requesting alcohol and drug treatment. During the intake interview, B.T. disclosed a long history of drug and alcohol abuse, but she reported that her last use of either substance had been approximately nine months earlier. Initial tests performed on B.T. confirmed the absence of drugs or alcohol in her system. B.T. also revealed that she believed she was being manipulated electronically, or by means of some advanced technology, through radio frequencies she received in her right ear and by an implant in one of her teeth. Having identified in B.T. significant psychotic symptoms, the psychiatrist referred B.T. for admission to SJRMC Mental Health Center, with orders that she be observed every fifteen minutes and for further psychiatric evaluation and treatment. B.T. remained hospitalized at SJRMC until July 10,1996, with Doctor Kadrmas as her treating physician.

As a resident of Nez Perce County without resources and pursuant to the medical indigency statutes, B.T. applied for assistance from the County for the payment of services incurred between June 30, 1996, and July 10, 1996. Her application which was filed upon her discharge from SJRMC was denied on August 13, 1996, for the following stated reasons: (a) no emergency existed; (b) no indigency existed; (c) the application was filed untimely; (d) Port of Hope, Idaho Mental Health, State Hospital North and South were available resources; (e) the application was incomplete and (f) other reasons: I.C. § 31–3202(13). SJRMC appealed the denial, and a hearing was held on December 10, 1996, before the Board of County Commissioners.

■ Counsel read into the record an agreed statement of issues, limiting the argument at the hearing to three questions: (1) whether psychiatric hospitalization was a necessary medical service under the definition found at I.C. § 31–3502(17); (2) whether the services were emergency services as defined by I.C. § 31–3502(2) and (13); and (3) whether other resources were available under I.C. § 31–3502(17) to determine whether B.T. was medically indigent under I.C. § 31–

3205(1).[1] The only witness called to testify before the Board was Doctor Kadrmas, the medical director of psychiatric services at SJRMC who had treated B.T. during her hospitalization.

The Board upheld the earlier denial of B.T.'s application on three grounds. The Board concluded that B.T. had "other resources" that were available, thus she was not indigent. The Board concluded that the treatment provided by SJRMC did not constitute "emergency services," thereby rendering the application untimely. Finally, the Board concluded that the medical indigency laws do not require counties to pay for short-term psychiatric hospitalization because those services are provided by the State. SJRMC filed a timely petition for judicial review of the Board's findings and conclusions.

The district court on appeal determined that the Board's findings were not supported by substantial competent evidence. It was unclear to the district court whether the Board was relying on information from Dr. Estes, a Boise psychiatrist who had been retained by the Board but who did not testify at the hearing on B.T.'s case. In order to ascertain the medical evidence that the Board had relied upon in making its decision, therefore, the district court entered an interim order remanding the matter to the Board for additional findings. The amended findings of fact and conclusions of law were then subject to review by the district court.

By order dated November 5, 1998, the district court again held that the Board's findings were not supported by substantial evidence. The district court reversed the decision of the Board denying indigency benefits and ordered that the County provide payment for the services supplied by SJRMC to B.T. The Board now appeals.

## II.

### STANDARD OF REVIEW

■ Where a district court acts in an appellate capacity under the Administrative Procedures Act, I.C. § 67–5215 (b) through (g) (repealed and recodified as I.C. § 67–5279), on further appeal from the district court's determination, we review the agency record independently of the district court's decision. *Payette River Property Owners Ass'n v. Board of Comm'rs of Valley County,* 132 Idaho 551, 976 P.2d 477(1999). The reviewing court may not substitute its judgment for that of the decision maker on questions of fact. *Idaho County v. Idaho Dep't of Health & Welfare,* 128 Idaho 846, 920 P.2d 62 (1996). The reviewing court can reverse or modify the administrative agency decision only in limited circumstances such as when the agency's decision is affected by error of law, is clearly erroneous in view of the whole record, or is found to be arbitrary and capricious. *Id.* A reviewing court may reverse the agency's decision or remand for further proceedings only if substantial rights of the appellant have been prejudiced. I.C. § 67–5279(4).

## III.

### THE BOARD'S FINDING THAT B.T. WAS NOT MEDICALLY INDIGENT IS NOT SUPPORTED BY SUBSTANTIAL AND COMPETENT EVIDENCE

■ Idaho Code, Section 31–3505B provides that the board shall approve an application for assistance if it determines that necessary medical services have been provided to a medically indigent person in accordance with Chapter 35. "Medically indigent" is defined as any person who is in need of necessary medical services and who does not have income and other resources available to him from whatever source sufficient to pay for necessary medical services. I.C. § 31–3502(1). The Board concluded that B.T. did not meet the statutory definition of "medically indigent" with respect to both the medical

---

1. The parties informed the Court at oral argument that they had stipulated to the application of the medical indigency statutes as amended, effective July 1, 1996, although no stipulation was contained in the record. Such stipulation appears to be consistent with authority holding that the law in effect at the time the applicant files for assistance governs. *See generally Shobe v. Ada County,* 130 Idaho 580, 944 P.2d 715 (1997).

and the financial components of the definition.

A. "Necessary medical services" means a requested or provided medical service required in order to identify or treat a medically indigent person's health condition, illness or injury and is:

(a) Consistent with the symptoms, diagnosis or treatment of the medical indigent's condition, illness or injury;

(b) In accordance with generally accepted standards of medical or surgical practice then prevailing in the community where the services were provided;

(c) Furnished on an outpatient basis whenever it is safe, efficient and reasonable to do so;

(d) Not provided primarily for the convenience of the medically indigent person or provider;

(e) The standard, most economical service or item that can safely, reasonably and ethically be provided.

B. Necessary medical services shall not include the following:

(a) Bone marrow transplants;

(b) Organ transplants;

(c) Elective, cosmetic and/or experimental procedures;

(d) Services related to, or provided by, residential and/or shelter care facilities;

(e) Normal, uncomplicated pregnancies, excluding caesarean section, and childbirth well-baby care;

(f) Medical copayments and deductibles; and

(g) Services provided by, or available to an applicant from state, federal and local health programs.

I.C. § 31–3502(18)(A), (B).

The Board found that B.T. had shown up at the hospital wanting "to get her life together," and wanting drug and alcohol treatment. Although the Board did note that B.T. had psychotic symptoms, the Board concluded that the treatment received by B.T. at the hospital was provided primarily for her convenience and was elective, and thus excluded from the definition of "necessary med-

ical services" under I.C. § 31–3502(18)(A)(d) and (B)(c).

The medical evidence in the record indicates that after evaluating B.T., Doctor Kadrmas determined that B.T. suffered from a long standing psychosis which was severe, very acute and very significant on the day of her admission in that she thought she was in danger because her mind was being controlled by others. He determined from B.T.'s descriptions of tones or buzzing in her right ear that she was experiencing "very clear delusions." Dr. Kadrmas placed B.T. on an anti-psychotic drug, Respiradol, which was administered throughout her hospitalization. As summarized by the district court on review of the Board's decision, "Doctor Kadrmas testified that persons with psychotic disorders are quite often a danger to themselves or to others because of their potential response to hallucinations. He indicated that the actions of a psychotic are often quite unpredictable, especially when the condition has not been previously diagnosed or treated, as in B.T.'s case."

The only competent medical testimony before the Board was that of Doctor Kadrmas, which supports a conclusion affirming the necessity of immediate psychiatric hospitalization and treatment provided to B.T. According to his medical expert opinion, which stands uncontradicted in the record, the services provided were required "in order to identify and treat [B.T.'s] illness." *See* I.C. § 31–1502(18)(A). The Board's conclusion that the services were not necessary medical services must be overturned as it is unsupported by substantial, competent evidence and is clearly erroneous.

■ The Board also denied B.T. medical indigency status based upon a finding that there were other resources available to provide the same services to B.T., such as state-supported mental health services, through Idaho Mental Health and the state psychiatric hospitals, and alcohol treatment through the Port of Hope and Roger's Counseling Center. The Board relied on an affidavit and supporting documentation from the program manager for Region II Mental Health Services, which is a program provided by the State of Idaho, Department of Health and

Welfare, Division of Family and Community Services. Under I.C. § 31–3502(18)(B)(g), "services ... available to an applicant from state, federal and local health programs" are not includable as "necessary medical services" for which the indigency statutes provide payment.

The record reflects that on the first day of service, B.T. was homeless, without income and with access to only one week of resources. Within a day of her admission, B.T. was interviewed by a representative of Idaho Mental Health for referral to a voluntary bed at State Hospital North. However, on July 8, 1996, Idaho Mental Health advised SJRMC that "Pathgrant Funds ha[d] been exhausted until September 1996 and that patient c[ould] follow up with Idaho Mental Health and Chemical Dependency program of choice." On July 9, 1996, another entry in B.T.'s hospital record indicates "Idaho Mental Health has refused to see patient due to diagnosis being drug and alcohol related." Recognizing a discharge plan problem in B.T.'s case, SJRMC continued to look into housing assistance on her behalf, other available services, and treatment referrals. When follow-up treatment was arranged through Roger's Counseling Center in Clarkston, Washington, B.T. was discharged from SJRMC.

The district court in its opinion on review dismantled the Board's finding that other resources were available to B.T. The district court determined that none of the documentation upon which the Board based its decision provided any details as to whether specific services were actually available to B.T. The district court further commented that the Regional Mental Health Services Act, I.C. § 39–3101 et seq., could not be used as a vehicle for determining the availability of services; that the Alcohol Treatment Act, I.C. § 39–300 et seq., did not address needs related to the psychosis for which B.T. was treated; and that there was no evidence in the record indicating that either the Port of Hope or Roger's Counseling Center provided short-term treatment for psychosis.

■ We hold the district court's reasoning to be in accord with authority prescribing that only those resources actually available to an applicant can be considered for purposes of eligibility for medical indigency benefits. *Intermountain Health Care, Inc. v. Board of County Comm'rs,* 107 Idaho 248, 688 P.2d 260 (Ct.App.1984), *rev'd on other grounds,* 109 Idaho 299, 707 P.2d 410 (1985). Indeed, contained in the affidavit of the program manager of Region II Mental Health Services is a clear statement that inpatient short-term psychiatric treatment was only available at State Hospital North or State Hospital South, where B.T. was refused admission following the required screening process. Thus, we will not uphold the Board's finding that other resources were available to B.T., which finding is contrary to the evidence.

Having overturned the findings that B.T. had other resources available and that the services she was provided by SJRMC were not necessary medical services, we reverse the Board's ultimate conclusion that B.T. was not medically indigent.

## IV.

## THE BOARD'S CONCLUSION THAT B.T.'S APPLICATION WAS NOT TIMELY FILED MUST BE REVERSED

■ The final reason given by the Board for denying B.T.'s claim that Nez Perce County was legally obligated to pay SJRMC's bill was that B.T.'s condition did not rise to the level of an emergency. The Board then determined that B.T.'s application for benefits was untimely under the medical indigency statutes which mandate that, except in cases of emergency, applications for relief must be made to the county prior to receiving services.

Under the statutory scheme, the time for filing applications and requests for necessary medical services depends upon whether the services can be characterized as emergency services. As defined in I.C. § 31–3502(13), "emergency service" means a service provided for a medical condition in which sudden, serious and unexpected symptoms of illness or injury are sufficiently severe to necessitate or call for immediate medical care. An

 

application for emergency necessary medical services shall be made any time within thirty days following the first day of the provision of necessary medical services from the provider or in the case of hospitalization, thirty days from the date of admission. I.C. § 31–3505(2). An application for nonemergency necessary medical services shall be filed ten days prior to receiving services from the provider. I.C. § 31–3505(1). Therefore, only upon a showing that the services provided to B.T. were "emergency services" will her application filed on the date of her discharge from the hospital be deemed filed within the statutory parameters and subject to consideration for payment by the County.

As with our analysis on the question of whether the services provided to B.T. were "necessary services," we refer to the expert testimony of Doctor Kadrmas to determine whether the services were "emergency services." The doctor testified that because of B.T.'s significantly impaired judgment, immediate hospitalization was called for, and more appropriate than either treating B.T. on an outpatient basis or deferring admission for ten days.[2] The treatment B.T. received at SJRMC included medication, group and individual therapy, and a drug and alcohol evaluation. Doctor Kadrmas testified that he had no way of knowing whether B.T. would have died from her psychosis had she left the hospital and not been admitted. Doctor Kadrmas also testified that although B.T. was asking for drug and alcohol treatment, she clearly was in need of treatment for a psychotic condition that had never been diagnosed and had never been treated before, making her situation an emergent condition.

■ It has already been noted that the record contains only the testimony of Doctor Kadrmas. The opinion of the expert hired by the County was not offered to rebut the opinion of Doctor Kadrmas, and the basis for the Board's finding that the services were non-emergent rests on the Board's independent interpretation of the medical records. However, a conclusion that no emergency existed, in the absence of expert medical

testimony to support that conclusion, must be ruled clearly erroneous. *See In Re Johnson,* 126 Idaho 392, 883 P.2d 1084 (Ct.App.1994). The evidence from Doctor Kadrmas constitutes substantial, competent evident that B.T.'s condition required immediate hospitalization and treatment. Accordingly, B.T.'s application for indigency benefits for the emergency services provided by SJRMC was timely filed.

## CONCLUSION

The decision of the Board denying the application for payment to SJRMC for the services provided to B.T. is reversed. Costs to respondent. No attorney fees are awarded on appeal.

Chief Justice TROUT and Justices SILAK, SCHROEDER and KIDWELL concur.

---

2. Under I.C. § 31–3505(1), an application for non-emergency necessary medical services shall

be filed ten (10) days prior to receiving services from the provider.