IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 47872

ST. LUKE'S HEALTH SYSTEM, LTD., )
)
   Petitioner-Appellant, )
)
v. )
)
BOARD OF COMMISSIONERS OF GEM )
COUNTY, IDAHO, in their official capacity as )
the Board of County Commissioners for the )
County of Gem, State of Idaho, )
)
   Respondent. )

Boise, February 2021 Term

Opinion Filed: May 19, 2021

Melanie Gagnepain, Clerk

Appeal from the District Court of the Second Judicial District, State of Idaho, Gem County. D. Duff McKee, District Judge.

The decision of the district court is <u>reversed</u>.

Hawley Troxell Ennis & Hawley LLP, Boise, for appellant, St. Luke's Health System, Ltd. Mark C. Peterson argued.

Erick B. Thompson, Gem County Prosecuting Attorney, Emmett, for respondent, Board of Commissioners of Gem County, Idaho. Tahja L. Jensen argued.

_____

BURDICK, Justice.

This is a medical indigency case returning to this Court after remand to the Board of Gem County Commissioners (the Board) in February 2019.[1]

In the original case, St. Luke's Meridian Medical Center (St. Luke's) provided inpatient hospital care for an indigent patient from January 26, 2016, until March 9, 2016. St. Luke's sought payment from the Board by submitting a medical indigency application. In September 2016, the Board issued an initial determination, only approving payment from January 26 through February 2, 2016. St. Luke's appealed the denial. The Board amended its determination by only partially extending payment approval through February 18, 2016. St. Luke's filed a petition for judicial review. In October 2017, the district court affirmed the Board's decision. St. Luke's appealed to

_____

[1] *See generally Re: Med. Indigency Application of C.H.*, 164 Idaho 801, 435 P.3d 1121 (2019).

this Court, and we held that the Board's findings did not provide a reasoned analysis, as required by the Idaho Administrative Procedures Act (IDAPA). *See Re: Med. Indigency Application of C.H.*, 164 Idaho at 804–05, 435 P.3d at 1124–25. We remanded the matter back to the Board for it to make the required findings of fact and conclusions of law.

On remand, the Board entered its findings of fact, conclusions of law, and order. The Board again denied payment for services rendered from February 19 through March 9, 2016, finding that the services provided were not the most cost-effective services as required under the Idaho Medical Indigency Act. St. Luke's again filed a petition for judicial review, and the district court again affirmed the Board's decision. Once more, St. Luke's timely appealed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background.

The facts are undisputed by the parties. On January 26, 2016, the patient, C.H., was found unconscious in her home in Emmett, Idaho. While en route by ambulance to Valor Health in Emmett, C.H. had a tonic-clonic seizure. C.H. was started on antibiotics at Valor Health. C.H. was then transported to St. Luke's on the same day. At St. Luke's, she was treated for respiratory failure, as well as pneumococcal meningitis, which then led to sepsis.[2]

C.H. was intubated and sedated upon her arrival at St. Luke's. By February 2, 2016, she was no longer sedated, and she was extubated on February 11, 2016. Following extubation, St. Luke's began the process of securing a referral for rehabilitation. Several facilities declined on the grounds that C.H.'s rehabilitation would be for a longer term than they provided, or out of concern that if C.H. were to have a medical catastrophe, the facility would lack the ability to care for her. Other facilities declined referral because of C.H.'s limited funding. On February 26, 2016, St. Luke's began discussions with Life Care Center of Treasure Valley (Life Care) about referring C.H. Life Care agreed to accept her on February 29, 2016, contingent on St. Luke's agreement to pay for C.H.'s care. C.H. remained at St. Luke's until March 9, 2016, when she was transferred to Life Care Center.

### B. Procedural History.

#### 1. Original Board Decision and Appeal.

During C.H.'s stay, St. Luke's filed an application with the Board for county aid for necessary medical services rendered from January 26 until March 9, 2016. On September 19, 2016,

---

[2] It was concluded that C.H.'s seizures had been caused by severe brain lesions secondary to meningitis.

the Board issued its initial determination of approval; however, the Board approved only dates of service from January 26 until February 2, 2016. This determination was based on the review of the county medical advisor, Dr. Doug Dammrose, who determined that the care provided after February 3, 2016, was not medically necessary from a clinical standpoint because the Board had not submitted medical records for that period of time. The Board submitted additional medical records to Dammrose on several occasions, and Dammrose ultimately amended his report to indicate that C.H. "was medically stable on" February 19, after which "she no longer needed the services of an acute care inpatient hospital."

St. Luke's appealed the Board's denial of payment for services rendered from February 19 through March 9, 2016, and an appeal hearing was held February 6, 2017. The Board issued its amended determination of approval that same day, approving dates of service up through February 18, 2016, and denying payment for services provided after that date. This determination was not accompanied by any findings of facts or conclusions of law.

St. Luke's then petitioned for judicial review of the amended decision to the district court on March 6, 2017. The district court affirmed the Board's decision. St. Luke's appealed to this Court, and this Court heard and issued a decision in the case. *See Re: Medical Indigency Application of C.H.*, 164 Idaho 801, 435 P.3d 1121 (2019). In our decision, we concluded that the Board's decision lacked the necessary findings of fact and conclusions of law. *Id.* at 804, 435 P.3d at 1124. This Court vacated the Board's determination and remanded the case for entry of findings of fact and conclusions of law required by the Idaho Administrative Procedures Act (IDAPA). *Id.*

2. The Board's Subsequent Decision and Judicial Review.

No additional hearing was held on remand. Instead, the Board entered its findings of fact and conclusions of law on June 17, 2019, from the existing record. The Board made the following findings of fact, quoting Dammrose's report in part:

"The additional clinical notes indicate the patient was medically stable on 02/19 and it appears she no longer needed the services of an acute care inpatient hospital." . . . Dr. Dammrose found that the inpatient stay from 02/19/2016 to 03/09/2016 was rehabilitative in nature and not medically necessary per Idaho Code § 31-3502(18)A(e)(B)(d) [sic].

The Board concluded:

The patient was medically ready for discharge as of 02/19/2016. The medical opinion of Dr. Dammrose is that dates of service 02/19/2016 to 03/09/2016 were not necessary medical services as defined in the statute. There was no contrary

3

evidence presented and St. Luke's argument does not contradict the medical evidence.

St. Luke's filed a petition for judicial review with the district court. Following briefing and oral argument, the district court entered its memorandum decision and order on February 14, 2020, in which it again affirmed the Board's decision. The district court stated the issue in the case as "whether the existence of available resources, as used in the statutes, includes business considerations of willingness to accept indigent patients." The district court's reasoning focused first on the applicability of *St. Joseph Regional Medical Center v. Nez Perce County*, 134 Idaho 486, 5 P.3d 466 (2000), and rejected St. Luke's interpretation of this case that only resources that are *actually* available may be considered for purposes of eligibility for medical indigency benefits. The district court concluded that *St. Joseph* was inapplicable because cost or the patient's inability to pay was not a factor in the issue of availability; instead, the court focused on the availability of the required services in the area. The district court also observed that on remand from the first appeal, this Court did not mandate an analysis by the Board of the financial availability of alternative services. The district court stated that "[o]n remand, the commissioner[s] fixed what they were told to fix."

The district court noted that under Idaho Code section 32-3502(18), the County was not required to pay for medically unnecessary services. Services were by definition medically unnecessary if they could be provided by another facility at a lower cost. The district court concluded that "[t]here is nothing in the statute, or in the *St. Joseph's* [sic] case construing the statute, that requires the [C]ounty to demonstrate that an alternate facility is available that will actually and unconditionally accept the patient."

The district court then approached the issue as though the Board's decision constituted an agency interpretation subject to deference under the four-pronged test articulated in *Duncan v. State Board of Accountancy*, 149 Idaho 1, 3, 232 P.3d 322, 324 (2010).[3] The district court concluded:

---

[3] This four-pronged test requires a court to "determine whether (1) the agency is responsible for administration of the rule in issue; (2) the agency's construction is reasonable; (3) the language of the rule does not expressly treat the matter at issue; and (4) any of the rationales underlying the rule of agency deference are present." *Duncan*, 149 Idaho at 3, 232 P.3d at 324. This Court has articulated "five rationales underlying the rule of deference: (1) that a practical interpretation of the rule exists; (2) the presumption of legislative acquiescence; (3) reliance on the agency's expertise in interpretation of the rule; (4) the rationale of repose; and (5) the requirement of contemporaneous agency interpretation." *Id.*

4

Here, the board of commissioners is responsible for administering Idaho Code § 31-3501, *et. seq.* within Gem County; the county's construction of the statute is reasonable; the language in the statute is not clear as to whether financial considerations are to be taken into consideration; and the county has articulated a practical interpretation of the rule. Thus[,] the county's interpretation of the statute is entitled to deference.

It is a policy determination for the county to decide that the financial circumstances of a particular patient are not relevant to the consideration of the most cost-effective services and whether alternative providers are available. This court concludes that the county was correct in its determination that the issue of availability of alternative providers includes only the determination that such facilities actually exist, have beds or openings available, and do provide the appropriate level of care necessary to the patient's situation. The issue does not include the specific issue of non-acceptance of the patient based upon financial considerations.

The district court accordingly held that the Board's decision was neither arbitrary nor without foundation and affirmed. St. Luke's filed a timely appeal.

## II. STANDARD OF REVIEW

While a county board of commissioners is not a state agency, express statutory provisions require a county's denial of medical indigency benefits to be reviewed under Idaho's Administrative Procedure Act [(IDAPA)]. *Mercy Med. Ctr. v. Ada Cnty., Bd. of Cnty. Commissioners of Ada Cnty.*, 146 Idaho 226, 229, 192 P.3d 1050, 1053 (2008) (citing I.C. §§ 31–3505G, 31–3511(5), 31–1506). This Court freely reviews the county board's legal conclusions, and it will not alter factual determinations as long as the board's findings are supported by substantial and competent evidence. *Id.* When the district court acts in an appellate capacity under Idaho's Administrative Procedure Act, this Court reviews the agency's determination independent of the district court's decision. *Id.*; *St. Joseph Reg'l Med. Ctr. v. Nez Perce Cnty. Commissioners*, 134 Idaho 486, 488, 5 P.3d 466, 468 (2000).

*Re: Med. Indigency Application of C.H.*, 164 Idaho 801, 803–04, 435 P.3d 1121, 1123–24 (2019).

Under IDAPA, a reviewing court "shall affirm the agency action unless the court finds that the agency's findings, inferences, conclusions, or decisions are . . . (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion." I.C. § 67-5279(3). "If the agency action is not affirmed, it shall be set aside, in whole or in part, and remanded for further proceedings as necessary." *Id.* Further, "agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4).

"This Court exercises free review over statutory interpretation because it is a question of law." *St. Alphonsus Reg'l Med. Ctr. v. Raney*, 163 Idaho 342, 345, 413 P.3d 742, 745 (2018) (citing *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013)).

### III.    ANALYSIS

Idaho's medical indigency statutory scheme exists "to safeguard the public health, safety and welfare, and to provide suitable facilities and provisions for the care and hospitalization of persons in this state, and, in the case of medically indigent residents, to provide for the payment thereof[.]" I.C. § 31-3501(1). "Idaho's Medical Indigency Act requires counties to contribute to the cost of providing necessary medical care to county residents who are indigent." *St. Luke's Magic Valley Reg'l Med. Ctr., Ltd.*, 150 Idaho 484, 486, 248 P.3d 735, 737 (2011); *see also* I.C. § 31-3505B. "The legislature's general intent in enacting the medical indigency assistance statutes was two-fold: to provide indigents with access to medical care and to allow hospitals to obtain compensation for services rendered to indigents." *Carpenter v. Twin Falls Cnty.*, 107 Idaho 575, 582, 691 P.2d 1190, 1197 (1984) (citing I.C. § 31-3501).

### A. Idaho Code section 31-3502(18)A(e) requires a meaningful comparison of services that are "actually available" to a patient when determining which services are the "most cost-effective."

Below, the Board concluded, relying on Dammrose's determination that C.H. was medically stable for transfer to a lower level of care, that the medical services provided after February 18, 2016, were not medically necessary because they were not the "most cost-effective." On appeal to the district court, St. Luke's argued that the comparison required by Idaho Code section 31-3502(18)A(e) necessarily mandated that the services being compared be actually available to the patient. In response, the Board contended that nothing in the statute required that the services had to be actually available. The district court agreed with the Board, affirming its decision and concluding that there was nothing in the statute, or in this Court's case law, that required the County to demonstrate that an alternate facility was actually available and willing to accept a patient. The district court treated the Board's decision as an agency interpretation subject to review under the four prongs of the test articulated in *Duncan v. State Board of Accountancy*, 149 Idaho 1, 3, 232 P.3d 322, 324 (2010), and concluded that the Board's decision was a reasonable interpretation under this standard.

On appeal to this Court, St. Luke's again argues that the plain language of the definition of "medically necessary services" requires that services be actually available in order to be part of

6

the comparison of "most cost-effective" services. The Board's response is that the plain language does not require a consideration of the actual *availability* of the services.

As a preliminary matter, the district court's application of the *Duncan* test to defer to the Board's decision was inapposite. This Court has never applied the *Duncan* test to a county board's determinations under the medical indigency statutes. Moreover, deference under *Duncan* is afforded a state agency because that agency is responsible for a consistent and statewide application of the statute in question. In this case, the district court concluded the *county* board of commissioners should be afforded deference under *Duncan.* The rationale supporting deference in *Duncan* is not applicable to a single county's interpretation of the statute. Were we to defer to an individual county's interpretation of the statute, we could potentially have 44 different county interpretations of the same statute. As a result, we reject the district court's deference to the Board's interpretation of the statute. Instead, we review these decisions under the statutory framework set out in Idaho Code section 67-5279(3).

We begin by interpreting Idaho Code section 31-3502(18)A(e). "The objective of statutory interpretation is to give effect to legislative intent." *St. Alphonsus Reg'l Med. Ctr. v. Elmore Cnty.*, 158 Idaho 648, 652, 350 P.3d 1025, 1029 (2015) (quoting *Idaho Youth Ranch, Inc. v. Ada Cnty. Bd. of Equalization,* 157 Idaho 180, 184, 335 P.3d 25, 29 (2014)). "Statutory interpretation begins with an examination of the literal words of a statute." *Id.* at 652–53, 350 P.3d at 1029–30 (quoting *J & M Cattle Co. v. Farmers Nat. Bank,* 156 Idaho 690, 694, 330 P.3d 1048, 1052 (2014)). "Statutes that are in pari materia are construed together to effect legislative intent." *Id.* at 653, 350 P.3d at 1030.

> Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Id.* (quoting *Am. Bank v. Wadsworth Golf Constr. Co. of the Sw.*, 155 Idaho 186, 191, 307 P.3d 1212, 1217 (2013)).

"Necessary medical services" are defined in two ways: in the affirmative, in section 31-3502(18)A; and in the negative, in section 31-3502(18)B. Necessary medical services *are* "health care services and supplies that:"

(a) Health care providers, exercising prudent clinical judgment, would provide to a person for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms;

(b) Are in accordance with generally accepted standards of medical practice;

(c) Are clinically appropriate, in terms of type, frequency, extent, site and duration and are considered effective for the covered person's illness, injury or disease;

(d) Are not provided primarily for the convenience of the person, physician or other health care provider; and

(e) Are the most cost-effective service or sequence of services or supplies, and at least as likely to produce equivalent therapeutic or diagnostic results for the person's illness, injury or disease.

I.C. § 31-3502(18)A.

Conversely, necessary medical services *do not* include

(a) Bone marrow transplants;

(b) Organ transplants;

(c) Elective, cosmetic and/or experimental procedures;

(d) Services related to, or provided by, residential, skilled nursing, assisted living and/or shelter care facilities;

(e) Normal, uncomplicated pregnancies, excluding caesarean section, and childbirth well-baby care;

(f) Medicare copayments and deductibles;

(g) Services provided by, or available to, an applicant from state, federal and local health programs;

(h) Medicaid copayments and deductibles; and

(i) Drugs, devices or procedures primarily utilized for weight reduction and complications directly related to such drugs, devices or procedures.

I.C. § 31-3502(18)B. Moreover, Idaho Code section 31-3502(18)A(e) explains: "'Necessary medical services' means health care services and supplies that . . . [a]re the most cost-effective service or sequence of services or supplies, and at least as likely to produce equivalent therapeutic or diagnostic results for the person's illness, injury or disease." I.C. § 31-3502(18)A(e).

At the outset, the word "most" in the phrase "most cost-effective" mandates a comparison of services or sequence of services. Our chief task is to determine what services are to be compared such that the resulting comparison is a meaningful one. The Board contends that it is enough that lower-level services *exist* in the abstract for these services to be part of the comparison. We are not convinced. In order for this comparison to be meaningful, it must account for the patient's

circumstances. We can find no clearer reason why this comparison must be based in reality and individualized to the patient than in the second clause of subsection 31-3502(18)A(e), which recognizes the Legislature's focus on *results*: necessary medical services must be "at least as likely to produce equivalent therapeutic or diagnostic results for the person's illness, injury or disease." I.C. § 31-3502(18)A(e). Services that are only hypothetically available to a person will invariably have *no* therapeutic or diagnostic results. Accordingly, we are led by the plain text of the subsection to conclude that any services being compared when determining what will be the "most cost-effective" must be presently available to the patient and not merely theoretically available, as such services would not produce *any* results for the patient. Interpreting otherwise—that is, mandating a comparison that ultimately is not meaningful to the decision-maker or to the patient—renders the requirement of a comparison superfluous. *See Saint Alphonsus Reg'l Med. Ctr.*, 163 Idaho at 345, 413 P.3d at 745.

We are further guided by the statute's use of the present tense in declaring that "necessary medical services" "*are*" the most cost-effective. *See* I.C. § 31-3502(18)A. The repeated use of the present tense verb "are" in subsections (18)A(b)-(e) indicates that the Legislature intended for any alternative services that would be compared against what was actually available at the time a comparison is made. Again, services that presently exist but are not available to the patient cannot be part of a meaningful comparison when the comparison *requires* accounting for the service's results for the patient. We conclude that the determination of the "most cost-effective" services may only properly consider services that are presently available to a patient. The Board's failure to do so constituted an abuse of discretion by violating the statutory provisions defining medically necessary services, and by exceeding its statutory authority.

Furthermore, the plain language of the subsection is consistent with the stated purposes of Idaho's medical indigency laws. *See Univ. of Utah Hosp. v. Ada Cnty. Bd. of Comm'rs*, 143 Idaho 808, 810, 153 P.3d 1154, 1156 (2007) (quoting *Carpenter v. Twin Falls Cnty.*, 107 Idaho 575, 582, 691 P.2d 1190, 1197 (1984)) ("[T]his Court has stated that 'the legislature's general intent in enacting the medical indigency assistance statutes was two-fold: to provide indigents with access to medical care and to allow hospitals to obtain compensation for services rendered to indigents.'"). We also note that the Legislature empowered counties to enter into contracts to arrange for the care of indigent residents, further supporting our conclusion that services must be actually available to a patient. See I.C. §§ 31-3507, 31-3503(2). If the Board does not want to pay

9

a hospital for medically necessary, acute care, inpatient services, it has the legislative authority to contract with a provider for less-expensive services.

As a final note, we acknowledge that the parties spent significant time briefing the applicability of *St. Joseph Regional Medical Center v. Nez Perce County Commissioners*, 134 Idaho 486, 5 P.3d 466 (2000). Although at first blush *St. Joseph* may appear factually similar, it is not as analogous as either St. Luke's or the Board suggest. Our focus on the availability of resources in *St. Joseph* was rooted in the plain language of the statutory definition at issue there, which *explicitly exempted* "available" services "from state, federal and local health programs" from those that would be considered medically necessary services. *See* I.C. § 31-3502(18)B(g). Importantly, the word "available" is not present in subsection (18)A(e), the statutory provision at issue in this case. Accordingly, *St. Joseph* is inapposite to our interpretation of Idaho Code section 31-3502(18)A(e).

Because we conclude that the plain language of section 31-3502(18)A(e) establishes that services must be actually available to the patient to be the "most cost-effective," we decline to address the parties' remaining arguments. Where the determination by Dammrose and the decision by the Board did not have the benefit of our interpretation of this definition, the proper remedy is to set aside the Board's decision and remand for reconsideration under the proper interpretation.

## B. Attorney fees will not be awarded on appeal, but costs are awarded to St. Luke's.

St. Luke's has requested attorney fees under Idaho Code section 12-117(1), which allows for an award of attorney fees if the Court "finds that the nonprevailing party acted without a reasonable basis in fact or law." I.C. § 12-117(1). St. Luke's argues that the Board has acted without reasonable basis in fact or law for denying dates of service from February 19 until March 9, 2016. In response, the County contends that because this is an issue of first impression, attorney fees are not warranted. (Citing *City of Osburn v. Randel*, 152 Idaho 906, 909, 277 P.3d 353, 356 (2012)). We reject the argument made by St. Luke's that the Board's position "was without a reasonable basis in fact or law." This appears to be a question of first impression and subject to legitimate debate. Consequently, we deny an award of attorney fees to St. Luke's. However, under Idaho Appellate Rule 40, St. Luke's is entitled to costs as the prevailing party. I.A.R. 40.

## IV. CONCLUSION

Because the Board's decision reflects a misinterpretation of the definition of "medically necessary services," we set aside the Board's decision and remand this case for further

proceedings. No attorney fees will be awarded, but costs are awarded to St. Luke's as a matter of right.[4]

Chief Justice BEVAN, Justices BRODY, STEGNER and MOELLER CONCUR.

---

[4] Today, the Court also decides an identical issue in *St. Alphonsus v. Ada County Board of Commissioners*, Docket No. 47867.