## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 47867

SAINT ALPHONSUS REGIONAL
MEDICAL CENTER, INC.,

    Petitioner-Respondent,

v.

ADA COUNTY and THE BOARD OF ADA
COUNTY COMMISSIONERS,

    Respondents-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**Boise, February 2021 Term**

**Opinion Filed: May 19, 2021**

**Melanie Gagnepain, Clerk**

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Peter G. Barton, District Judge.

The decision of the district court is <u>affirmed</u>.

Jan M. Bennetts, Ada County Prosecuting Attorney, Boise, for appellants, Ada County and the Board of Ada County Commissioners. Claire S. Tardiff argued.

Scanlan Griffiths Aldridge + Nickels, Boise, for respondent St. Alphonsus Regional Medical Center, Inc. Bryan A. Nickels argued.

———————————————

BURDICK, Justice.

This is an appeal from a medical indigency decision made by the Board of Ada County Commissioners (the Board). An indigent patient was admitted to St. Alphonsus Regional Medical Center (St. Alphonsus) on October 7, 2017, and continued to receive treatment in the hospital until she was discharged on January 12, 2018. During her stay, St. Alphonsus filed a third-party medical indigency application on her behalf, and later filed two additional requests for payment of services. The Board approved dates of service from October 7 until October 10, 2017, but denied payments for services provided from October 11 until December 31, 2017,[1] relying on the opinion of the Ada County Medical Advisor that the services provided on those dates were not "medically necessary" under the definition in Idaho Code section 31-3502(18)A(e). St. Alphonsus appealed

---

[1] St. Alphonsus has not sought reimbursement for the services it rendered to C.G. from January 1 until her discharge home on January 12, 2018.

1

the Board's initial determination, and the Board issued its final determination upholding the denial of payment for services rendered from October 11, 2017, until December 31, 2017.

St. Alphonsus petitioned for judicial review with the district court. The district court reversed the decision of the Board. Ada County, on behalf of the Board of Commissioners, now appeals to this Court. For the reasons set out below, we affirm the decision of the district court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background.

On October 7, 2017, the patient, C.G., visited the emergency room at St. Alphonsus in Boise, Idaho. She complained of fatigue, weakness, heartburn, and bilateral leg pain. Her abdomen was distended. Her eyes were jaundiced. She was admitted to the hospital on October 8, 2017, with a diagnosis of acute liver failure. Prior to her admission, C.G. underwent several tests including a diagnostic paracentesis for suspected ascites,[2] a CT scan of the abdomen and pelvis, and a chest x-ray. The admitting physician observed that C.G. was being admitted with "a [l]ow threshold to transfer to the ICU if she decompensates." C.G. was transferred to the medical floor on October 10.

C.G.'s treating physicians noted the cascade of conditions related to her acute liver failure, with one observing on October 11, 2017, that she "appear[ed] to be decompensating slowly." In addition to diagnosing acute liver failure secondary to alcoholic hepatitis, C.G.'s physicians also confirmed that she had severe esophagitis with ulceration, which contributed to and exacerbated what was identified as ongoing malnutrition. Other diagnoses included acute kidney injury and dysphagia.[3] As care continued, concerns were expressed that C.G. lacked the "ability to comprehend her current medical situation or its gravity[,]" and a neuropsychology consult was scheduled. C.G. also exhibited ongoing confusion during her treatment, which slowly improved.[4] By October 25, 2017, C.G. had "had several falls" and her general weakness and issues with balance remained an issue throughout her hospital stay.

---

[2]  Ascites is excess fluid in the abdominal cavity. In C.G.'s case, this fluid build-up was connected to her liver failure.
[3] Dysphagia is marked by pain or difficulty in swallowing. It was noted in C.G.'s self-reported history that she "apparently does not eat meals on any regular basis."
[4] C.G.'s flat affect and confusion led physicians to suspect hepatic encephalopathy (a broad term for any brain disease altering brain function or structure) associated with C.G.'s liver disease and that organ's failure. C.G. was started on lactulose, which is a sugar solution that works to decrease the effects of liver failure on the brain by removing ammonia from the blood. At the same time, her physicians sought to rule out major depression as a contributor, and C.G. was started on an antidepressant after a consultation with a neuropsychiatrist.

C.G.'s fluid retention and excess fluid in her abdominal cavity was an ongoing issue even as her ability to eat and drink improved. During C.G.'s stay, a total of four paracentesis procedures were performed, during which substantial amounts of fluid were removed from her abdomen. The first was performed on October 8, 2017, as a diagnostic procedure. The second was performed October 10, 2017, in which 5,800 mL of fluid were removed. The third was performed on October 13, 2017, in which 1,900 mL of fluid were removed. The fourth was performed on October 20, 2017, in which 3,000 mL of fluid were removed. Fluid retention increased in mid-November, but when C.G. went for a final paracentesis, ultrasound imaging revealed that the distension in her abdomen was caused by swelling of her pancreas, and that there was no fluid to drain from her abdomen.

Even as C.G.'s condition began to stabilize, the options available to C.G. were limited because of her lack of funding and compromised physical condition. On October 13, 2017, after C.G.'s third paracentesis, her treating physician "started discussions . . . about possible rehabilitation[,]" but noted that C.G. had no funding available. Subacute rehabilitation was needed, but without funding, C.G. could not afford to pursue outpatient placement and would not be accepted into such a placement. This scenario was repeated on numerous occasions. Another option was the subacute rehabilitation unit at St. Alphonsus, but that facility was limited to patients needing a stay of 7-10 days for rehabilitation before returning home. A treating physician observed on October 19, 2017, that C.G. had "needs that would likely take longer than 7-10 days to return to baseline." Ultimately, C.G. was not accepted by the in-hospital rehabilitation unit for funding reasons. Yet another option was to discharge her to her home, but due to C.G.'s numerous falls and generalized weakness, her treating physicians concluded that she was not yet strong enough to go home.

C.G. continued physical and occupational therapy in the hospital. She remained inpatient until she was deemed strong enough to be discharged home on January 12, 2018.

## B. Procedural History.

On November 7, 2017, St. Alphonsus filed a medical indigency application on C.G.'s behalf with Ada County. St. Alphonsus filed an additional request on December 6, 2017. St. Alphonsus also filed a second additional request on December 31, 2017. On April 11, 2018, the Board of Ada County Commissioners issued two determinations. In the first, the Board approved payment for emergency room and inpatient treatment including ancillary services from October 7

until October 10, 2017. In the second, the Board denied payment for services rendered from October 11 until December 31, 2017. St. Alphonsus appealed this denial, and on April 24, 2019, the Board issued its final determination upholding the denial.

The Board's final determination was based on the opinion of the Ada County Medical Advisor, Dr. Doug Dammrose. Dammrose opined that C.G.'s emergency room and inpatient hospitalization from October 7 until October 10 were medically necessary and emergent, but that all subsequent dates were "considered not medically necessary for purposes of payment." Dammrose reasoned that C.G. "was clearly ready for a transfer to subacute rehabilitation on [October 10] but had no funding."

On May 28, 2019, St. Alphonsus filed a petition for judicial review. In its opening brief, St. Alphonsus initially argued that the Board had exceeded its statutory authority by denying payment for services when no subacute facilities were actually available, pointing out that subacute rehabilitation did not fall under Idaho Code section 31-3502(18)B's enumeration of unnecessary medical services. St. Alphonsus next argued that the Board's decision was also unsupported by the record, and had been made arbitrarily, capriciously, and as an abuse of discretion.

In the Board's responsive brief it argued that, in addition to Idaho Code section 31-3502(18)B's enumeration of what are *not* medically necessary services, "necessary medical services" are also defined in Idaho Code section 31-3502(18)A, which contained no requirement that the services had to be actually available.

Following oral argument, the district court entered its opinion on judicial review. The district court concluded that a plain reading of the definition of "necessary medical services" required that the service be currently available, based on the use of present tense verb "are" and the comparative "most" in Idaho Code section 35-3502(18). The district court also observed that absurd results would occur if the unavailability of services could defeat a claim for reimbursement. Further, the district court relied on *St. Joseph Regional Medical Center v. Nez Perce County Commissioners*, for the proposition that "[o]nly services *actually available* to a patient are considered for purposes of what services are most cost-effective." 134 Idaho 486, 490, 5 P.3d 466, 470 (2000) (italics added). The district court also noted that section 31-3502(18)B did not *exclude* the services provided to C.G. Finally, the district court concluded that St. Alphonsus' rights had

4

been prejudiced. The district court reversed the Board's determination, concluding that remand was only necessary to implement the ruling.

Ada County, on behalf of the Board, timely filed its notice of appeal.

## II.     STANDARD OF REVIEW

"While a county board of commissioners is not a state agency, express statutory provisions require a county's denial of medical indigency benefits to be reviewed under Idaho's Administrative Procedure Act (APA)." *Re: Med. Indigency Application of C.H.*, 164 Idaho 801, 804, 435 P.3d 1121, 1124 (2019) (quoting *Mercy Med. Ctr. v. Ada Cnty.*, 146 Idaho 226, 229, 192 P.3d 1050, 1053 (2008)).

> Where a district court acts in an appellate capacity under the Administrative Procedures Act, I.C. § [67–5279], on further appeal from the district court's determination, we review the agency record independently of the district court's decision. *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley Cnty.*, 132 Idaho 551, 976 P.2d 477 (1999). The reviewing court may not substitute its judgment for that of the decision maker on questions of fact. *Idaho Cnty. v. Idaho Dep't of Health & Welfare*, 128 Idaho 846, 920 P.2d 62 (1996).

*St. Joseph Reg'l Med. Ctr.*, 134 Idaho at 488, 5 P.3d at 468.

> This Court may only overturn the Board's decision upon a finding that the decision: (a) violates statutory or constitutional provisions; (b) exceeds the Board's statutory authority; (c) is made upon unlawful procedure; (d) is not supported by substantial evidence in the record; or (e) is arbitrary, capricious, or an abuse of discretion. I.C. § 67–5279(3). Additionally, the party attacking the Board's decision must demonstrate that a substantial right has been prejudiced. I.C. § 67–5279(4).

*St. Luke's Magic Valley Reg'l Med. Ctr., Ltd. v. Bd. of Cnty. Comm'rs of Gooding Cnty.*, 150 Idaho 484, 486, 248 P.3d 735, 737 (2011). "If the agency action is not affirmed, it shall be set aside, in whole or in part, and remanded for further proceedings as necessary." I.C. § 67-5279(3).

"This Court exercises free review over statutory interpretation because it is a question of law." *Saint Alphonsus Reg'l Med. Ctr. v. Raney*, 163 Idaho 342, 345, 413 P.3d 742, 745 (2018) (citing *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013)).

## III.     ANALYSIS

Idaho's medical indigency statutory scheme exists "to safeguard the public health, safety and welfare, and to provide suitable facilities and provisions for the care and hospitalization of persons in this state, and, in the case of medically indigent residents, to provide for the payment thereof[.]" I.C. § 31-3501(1). "Idaho's Medical Indigency Act requires counties to contribute to the cost of providing necessary medical care to county residents who are indigent." *St. Luke's*

5

*Magic Valley Reg'l Med. Ctr., Ltd.*, 150 Idaho 484, 486, 248 P.3d 735, 737 (2011); *see also* I.C. § 31-3505B. "The legislature's general intent in enacting the medical indigency assistance statutes was two-fold: to provide indigents with access to medical care and to allow hospitals to obtain compensation for services rendered to indigents." *Carpenter v. Twin Falls Cnty.*, 107 Idaho 575, 582, 691 P.2d 1190, 1197 (1984) (citing I.C. § 31-3501).

### A. Idaho Code section 31-3502(18)A(e) requires a meaningful comparison of services that are "actually available" to a patient when determining which services are the "most cost-effective."

In its Initial Determination, the Board denied payment for services rendered after October 11, 2017, because those services were "not medically necessary according to Idaho Medical Review LLC because the patient was clearly ready for transfer to subacute rehabilitation on October 10, 2017 but had no funding." In the Board's Final Determination, the initial decision to deny payment for services rendered after October 11, 2017 was upheld because "no new evidence [was] submitted in this matter sufficient to establish medical indigency."

On judicial review, the district court reversed the Board's determination that the services rendered after October 10, 2017 were not medically necessary.[5] The district court began its analysis by examining the plain language of Idaho Code section 31-3502(18)A. The district court noted that the statute employed the use of the present tense verb "to be" which is: "are."

> The present tense suggests a connection to a moment in time, the time of treatment, not to some future, past, or hypothetical time. The Legislature's use of present tense language in drafting the statute directs the nature of the investigation and determination of a county board who considers the applications for financial support. That a service may have been available or will be available is not suggested by the text of the statute. The service must be currently available.

Next, the district court looked to the use of the word "most" in "most cost-effective service," noting that it "invites a comparison of services available to the patient." The district court reasoned that it is "meaningless and illusory to compare outcomes to the patient of choices that are not available. . . If a certain treatment option is unavailable to a patient, that treatment option cannot win the comparison to be the 'most cost-effective' treatment." The district court next concluded that "if an unavailable service . . . could defeat a claim for reimbursement, it would

---

[5] We note here that the judicial review statute does not authorize a district court to "reverse" a Board's decision. Rather, Idaho Code section 67-5279(3) states: "[i]f the agency action is not affirmed, *it shall be set aside*, in whole or in part, and remanded for further proceedings as necessary." (Italics added.) If the district court found the Board's decision was in error, the proper disposition would have been to set it aside and remand the case.

[lead to] an absurd result." Based on its statutory interpretation analysis, the district court concluded that the services rendered to the patient from October 11 until December 31, 2017, were the most cost-effective, and therefore medically necessary, under Idaho Code section 31-3502(18)A.

The district court also concluded that Idaho Code section 31-3502(18)B, which lists services that are *not* medically necessary, does not list either "subacute rehabilitation," or "rehabilitation" as exclusions. *See* I.C. § 31-3502(18)B.

On appeal to this Court, the Board argues that the district court erred in finding that services must be "currently available" to a patient to be considered a "necessary medical service." The Board argues "there did exist options for the Patient to proceed to rehabilitation at a facility other than St. Alphonsus, but for the Patient's lack of funding." The Board continues by asserting that the "language of the statute that defines 'necessary medical services' does not implicate the financial availability of services to an individual patient based on his/her ability to pay." The Board argues that Idaho Code section 31-3502(18)A(e) is unambiguous in that "[t]here is no wording in [sub]section (e) of the statute that limits the 'most cost-effective services' to services that the Patient can afford to pay for."

The Board also argues that the district court erred in concluding that the services rendered to the patient from October 11 until December 31, 2017, were medically necessary "when alternate rehab[ilitation] facilities at St. Alphonsus Rehabilitation existed to provide the lower level of care required at a subacute care billed rate." The Board asserts that the "county . . . is not obligated to provide compensation to the applicant hospital when its own rehab unit's policies stand in the way of transferring the patient to a lower cost level of care."[6]

The Board next argues that when determining whether the services rendered are the most cost effective, that analysis should be "detached from any individual patient." The Board continues, "[t]he cost of service is the cost, unaffected by an individuals' ability to pay; and to view it otherwise is unreasonable and wrong." For that reason, the Board concludes that the "services provided by St. Alphonsus were not necessary medical services."

In response, St. Alphonsus argues that the district court was correct in determining that "only those services actually available to the patient are to be considered when determining

---

[6] The Board is referring to St. Alphonsus' in-house rehabilitation facility that declined to accept the patient because she would likely need to stay longer than the seven to ten day period typically allowed at this facility.

medical necessity." In employing a similar argument to that of the district court's decision, St. Alphonsus argues that "[b]y its plain language, the statute requires that the necessary medical services '[a]re the most cost-effective service' available, not that some unavailable, hypothetical medical services '[would be] the most cost-effective service.'" (Quoting I.C. § 31-3502(18)A(e).) St. Alphonsus also points out that neither the Board nor Dammrose dispute that there were no facilities available to accept the patient due to her lack of funding. Because "Saint Alphonsus was the only facility that would provide [the] services," St. Alphonsus argues, "they were the 'most cost-effective.'" (Citing *St. Joseph Reg'l Med. Ctr.*, 134 Idaho at 490, 5 P.3d at 470).

St. Alphonsus next argues that the Board has not identified any alternative service providers who could have provided a lower cost level of care to the patient. Instead, St. Alphonsus asserts that "[w]hat the [Board] demands here would have been for Saint Alphonsus to violate its own policy simply to assist the [Board] in avoiding reimbursement for care provided to the medically indigent patient." St. Alphonsus contends that the Board is attempting to re-direct its argument: "[T]his argument again attempts to reframe the denial by the [Board] and the Dammrose Report opinion – the Patient's dates of service were not denied because she could not be treated in-house due to St. Alphonsus policies, but because she lacked funding to be transferred to another 'subacute rehabilitation' facility." (Emphasis in original.)

St. Alphonsus finally argues that the legislative intent and policies behind the medical indigency statutes support its interpretation of Idaho Code section 31-3502(18). If this Court were to interpret the statute as the Board suggests, St. Alphonsus asserts that both purposes would be frustrated. Providers would face the choice of either "(1) discharging a patient home before the patient is clinically approved for discharge, or (2) continuing to treat an indigent patient without any potential for compensation." St. Alphonsus concludes that "interpreting Idaho Code § 31-3502(18) to allow the [Board] to deny payment based on hypothetical, rather than actually available services, is inconsistent with the Medical Indigency Act's purpose."

We begin by interpreting Idaho Code section 31-3502(18)A(e). "The objective of statutory interpretation is to give effect to legislative intent." *St. Alphonsus Reg'l Med. Ctr. v. Elmore Cnty.*, 158 Idaho 648, 652, 350 P.3d 1025, 1029 (2015) (quoting *Idaho Youth Ranch, Inc. v. Ada Cnty. Bd. of Equalization,* 157 Idaho 180, 184, 335 P.3d 25, 29 (2014)). "Statutory interpretation begins with an examination of the literal words of a statute." *Id.* at 652–53, 350 P.3d at 1029–30 (quoting *J & M Cattle Co. v. Farmers Nat. Bank,* 156 Idaho 690, 694,

8

330 P.3d 1048, 1052 (2014)). "Statutes that are in pari materia are construed together to effect legislative intent." *Id.* at 653, 350 P.3d at 1030.

> Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Id.* (quoting *Am. Bank v. Wadsworth Golf Constr. Co. of the Sw.*, 155 Idaho 186, 191, 307 P.3d 1212, 1217 (2013)).

"Necessary medical services" are defined in two ways: in the affirmative, in section 31-3502(18)A; and in the negative, in section 31-3502(18)B. Necessary medical services *are* "health care services and supplies that:"

> (a) Health care providers, exercising prudent clinical judgment, would provide to a person for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms;
>
> (b) Are in accordance with generally accepted standards of medical practice;
>
> (c) Are clinically appropriate, in terms of type, frequency, extent, site and duration and are considered effective for the covered person's illness, injury or disease;
>
> (d) Are not provided primarily for the convenience of the person, physician or other health care provider; and
>
> (e) Are the most cost-effective service or sequence of services or supplies, and at least as likely to produce equivalent therapeutic or diagnostic results for the person's illness, injury or disease.

I.C. § 31-3502(18)A.

> Conversely, necessary medical services *do not* include
>
> (a) Bone marrow transplants;
>
> (b) Organ transplants;
>
> (c) Elective, cosmetic and/or experimental procedures;
>
> (d) Services related to, or provided by, residential, skilled nursing, assisted living and/or shelter care facilities;
>
> (e) Normal, uncomplicated pregnancies, excluding caesarean section, and childbirth well-baby care;
>
> (f) Medicare copayments and deductibles;
>
> (g) Services provided by, or available to, an applicant from state, federal and local health programs;

9

(h) Medicaid copayments and deductibles; and

(i) Drugs, devices or procedures primarily utilized for weight reduction and complications directly related to such drugs, devices or procedures.

I.C. § 31-3502(18)B. Moreover, Idaho Code section 31-3502(18)A(e) explains: "'Necessary medical services' means health care services and supplies that . . . [a]re the most cost-effective service or sequence of services or supplies, and at least as likely to produce equivalent therapeutic or diagnostic results for the person's illness, injury or disease." *Id.*

At the outset, the word "most" in the phrase "most cost-effective" requires a comparison of services. Our chief task is to determine what services are to be compared such that the resulting comparison is meaningful. The Board contends that it is enough that lower-level services *exist* in the abstract for these services to be part of the comparison. We are not convinced. In order for this comparison to be meaningful, it must take into account the patient's actual circumstances. We can find no clearer reason why this comparison must be based in reality and individualized to the patient than in the second clause of subsection 31-3502(18)A(e), which recognizes the Legislature's focus on *results*: necessary medical services must be "at least as likely to produce equivalent therapeutic or diagnostic results for the person's illness, injury or disease." I.C. § 31-3502(18)A(e). Services that are only hypothetically available to a person will invariably have *no* therapeutic or diagnostic results. Accordingly, we are led by the plain text of the subsection to conclude that any services being compared when determining what will be the "most cost-effective" must be presently available to the patient and not merely theoretically available, as such latter services would not produce *any* results for the patient. Interpreting the statute otherwise— that is, mandating a comparison that ultimately is not meaningful to the decision-maker or to the patient—renders the requirement of a comparison superfluous. *See St. Alphonsus Reg'l Med. Ctr.*, 163 Idaho at 345, 413 P.3d at 745.

We are further guided by the statute's use of the present tense in declaring that "necessary medical services" "*are*" the most cost-effective. *See* I.C. § 31-3502(18)A. The repeated use of the present tense verb "are" in subsections (18)A(b)-(e) indicates that the Legislature intended for any alternative services that would be compared against what was actually available at the time a comparison is made. Again, services that presently exist but are not available to the patient cannot be part of a meaningful comparison when the comparison *requires* accounting for the service's results for the patient. As the district court noted, "[t]hat a service may have been available or will be available is not suggested by the text of the statute." We conclude that the determination of the

10

"most cost-effective" services may only properly consider services that are actually available to a patient. The Board's failure to do so constituted an abuse of discretion by violating the statutory provisions defining medically necessary services, and by exceeding its statutory authority.

Furthermore, the plain language of the subsection is consistent with the stated purposes of Idaho's medical indigency laws. *See Univ. of Utah Hosp. v. Ada Cnty. Bd. of Comm'rs*, 143 Idaho 808, 810, 153 P.3d 1154, 1156 (2007) (quoting *Carpenter v. Twin Falls Cnty.*, 107 Idaho 575, 582, 691 P.2d 1190, 1197 (1984)) ("[T]his Court has stated that 'the legislature's general intent in enacting the medical indigency assistance statutes was two-fold: to provide indigents with access to medical care and to allow hospitals to obtain compensation for services rendered to indigents.'"). We also note that the Legislature authorized counties to enter into contracts to arrange for the care of indigent residents, further supporting our conclusion that services must be actually available to a patient. *See* I.C. §§ 31-3507, 31-3503(2). If the Board does not want to pay a hospital for medically necessary, acute care, inpatient services, it has the legislative authority to contract with a provider for less-expensive services.

As a final note, we acknowledge that the parties spent significant time briefing the applicability of *St. Joseph Regional Medical Center v. Nez Perce County Commissioners*, 134 Idaho 486, 5 P.3d 466 (2000). Although at first blush *St. Joseph* may appear factually similar, it is not as analogous as either St. Alphonsus or the Board suggest. Our focus on the availability of resources in *St. Joseph* was rooted in the plain language of the statutory definition at issue there, which *explicitly exempted* "available" services "from state, federal and local health programs" from those that would be considered medically necessary services. *See* I.C. § 31-3502(18)B(g). Importantly, the word "available" is not present in subsection (18)A(e), the statutory provision at issue in this case. Accordingly, *St. Joseph* is inapposite to our interpretation of Idaho Code section 31-3502(18)A(e).

Because we conclude that the plain language of section 31-3502(18)A(e) establishes that services must be actually available to the patient to be the "most cost-effective," we decline to address the parties' remaining arguments.[7]

---

[7] We note that St. Alphonsus alternatively argued that the Board's decision was not based on substantial evidence. *See* I.C. § 67-5279(3)(d). Idaho Code section 67-5279(3) requires a finding of only one of the five grounds listed in order to set aside the agency's decision, as evidenced by the statute's use of the disjunctive "or." *See id.* Since we have held that the Board's decision to deny payment to St. Alphonsus for the services it rendered after October 10, 2017, exceeded the Board's statutory authority and violated the statutory provision defining "medically necessary services," we need not consider St. Alphonsus' substantial evidence argument. *See* I.C. § 67-5279(3)(b).

**B. St. Alphonsus' substantial rights were prejudiced by the Board's denial of payment for services rendered after October 10, 2017.**

In its decision on judicial review, the district court found that "St. Alphonsus's [sic] substantial rights to compensation for providing medical services to an indigent patient were violated by the Board's denial of reimbursement." On appeal, the Board does not argue that the district court's conclusion in this regard was in error. St. Alphonsus points out that the Board "did not advance any substantive argument in briefing or hearing that, even if the Board were found to have erred, Saint Alphonsus did not have its substantial rights prejudiced." St. Alphonsus argues that because the Board did not contest this point below or on appeal, if this Court should find that the Board erred in denying payment for the dates of services at issue, "it should also find that such error violated Saint Alphonsus' substantial rights."

Idaho Code section 67-5279(4) provides that an "agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." As discussed, the policy goals behind Idaho's medical indigency laws include "provid[ing] indigents with access to medical care and [] allow[ing] hospitals to obtain compensation for services rendered to indigents." *Carpenter*, 107 Idaho at 582, 691 P.2d at 1197. Because the Board erred in denying payment for services rendered to the patient from October 11, 2017, until December 31, 2017, we hold that St. Alphonsus' right to receive compensation for services rendered to the medically indigent patient was prejudiced by the Board's denial.

**C. Neither party is entitled to attorney fees on appeal, but costs are awarded to St. Alphonsus.**

The Board requests attorney fees on appeal pursuant to Idaho Code section 12-117. Because the Board has not prevailed it is not entitled to attorney fees.

St. Alphonsus does not request attorney fees on appeal but does request an award of costs as the prevailing party pursuant to Idaho Appellate Rule 40. Because St. Alphonsus has prevailed, it is awarded its costs as a matter of right. I.A.R. 40.

## IV. CONCLUSION

For the reasons stated, the Board's denial of payment to St. Alphonsus for services rendered from October 11, 2017, until December 31, 2017, is set aside and the case remanded for proceedings consistent with this opinion. The Board exceeded its statutory authority in denying St. Alphonsus reimbursement for providing medically necessary services. The Board's denial of payment was not based on substantial evidence and prejudiced St. Alphonsus' substantial right to

compensation for services rendered to an indigent patient. Finally, St. Alphonsus is awarded costs as the prevailing party on appeal.[8]

Chief Justice BEVAN, Justices BRODY, STEGNER and MOELLER CONCUR.

---

[8] Today, the Court also decides an identical issue in *St. Luke's v. Gem County Board of Commissioners*, Docket No. 47872.