**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 42175**

| | |
|---|---|
| IN THE MATTER OF T.A. AND T.O. | ) |
| -------------------------------------------------------- | ) Boise, May 2015 Term |
| SAINT ALPHONSUS REGIONAL | ) |
| MEDICAL CENTER, | ) 2015 Opinion No. 50 |
| | ) |
| Appellant, | ) Filed: May 22, 2015 |
| | ) |
| v. | ) Stephen W. Kenyon, Clerk |
| | ) |
| ELMORE COUNTY and THE BOARD OF | ) |
| ELMORE COUNTY COMMISSIONERS, | ) |
| | ) |
| Respondents. | ) |
| _____ | ) |

Appeal from the District Court of the Fourth Judicial District of the State
of Idaho, Elmore County.  Hon. Lynn G. Norton, District Judge.

The district court's judgment is vacated and the case is remanded
for further proceedings consistent with this Opinion. Costs on appeal
are awarded to appellant.

Elam & Burke, Boise, attorneys for appellant.  Robert A. Berry argued.

Elmore County Prosecutor's Office, Mountain Home, attorneys for
respondents. Jessica L. Kuehn argued.

Michael Kane & Associates, PLLC, attorneys for amicus, Idaho Association of Counties,
Inc.  Michael J. Kane argued

_____

W. JONES, Justice

## I.  NATURE OF THE CASE

This appeal from the district court presents an issue of statutory interpretation of the Medical Indigency Act. Appellant Saint Alphonsus Regional Medical Center (Saint Alphonsus) submitted third party medical indigency applications on behalf of two patients. Respondent Elmore County and the Board of Elmore County Commissioners (the Board) denied the applications because the Board determined that the applications were incomplete. Saint Alphonsus filed petitions for judicial review. The district court consolidated the cases and

1

affirmed the Board's decision. Saint Alphonsus appeals to this Court. We vacate and remand for further proceedings.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 2013, Saint Alphonsus submitted a Combined Application for State and County Medical Assistance on behalf of a patient T.O. Similarly, on March 18, 2013, Saint Alphonsus submitted a Combined Application for State and County Medical Assistance on behalf on a patient T.A. T.O.'s and T.A.'s applications will be referred to collectively as the "Applications."

Pages 1, 9, and 10 of the Applications had a line for the signature of the applicant. On Page 1, the applicant signs to acknowledge "that by completing this application form, it will be used to determine my eligibility" and "that I have read, understand, and will comply with the rules promulgated . . . pursuant to Title 31, Chapter 35, Idaho Code." On Page 9, the applicant signs a document titled "Patient Rights and Responsibilities for State and County Assistance," and, on Page 10, the applicant signs a document titled "Release of Information." Neither T.O. nor T.A. signed Pages 1, 9, and 10 of their Applications.

Page 9 also had a line for a signature "if by a third party applicant on behalf of the applicant," which was signed by a representative of Saint Alphonsus. In addition, the Applications included a fax cover sheet, titled "Request for Medicaid Eligibility Determination: Medically Indigent Program." This cover sheet also was signed by the Saint Alphonsus representative.

The Board initially denied both Applications. Saint Alphonsus appealed, and the Board upheld its initial denials of the Applications. In both cases, the Board recognized that one requisite finding "for the payment of indigent medical expenses" was "[a] 'completed application' must be timely filed." The Board found that the Applications lacked T.O.'s and T.A.'s signatures on Pages 1, 9, and 10. In addition, the Board found that the Applications did not contain all of T.O.'s and T.A.'s contact and financial information. Based on these findings, the Board concluded that the Applications were not "completed application[s]" as required by the Medical Indigency Act. Due to incompleteness, the Board did not determine eligibility—meaning that the Board did not determine whether (1) T.O. or T.A. were Idaho residents; (2) Elmore County was obligated to pay; (3) the medical services were necessary or emergent; or (4) T.O. or T.A. were medically indigent.

On August 1, 2013, Saint Alphonsus filed petitions for judicial review in both cases. The district court consolidated the cases.

On April 11, 2014, the district court issued a Memorandum Decision and Order. Contrary to the Board's decision, the district court determined that responses on the Applications such as "N/A," "No," or "unknown" for T.O.'s and T.A.'s contact and financial information were complete responses. The district court determined that the Applications were incomplete, however, because neither Saint Alphonsus nor T.O. or T.A. provided a signature to swear to the truth of the matters asserted in the Applications. Due to the missing signatures, the district court concluded that the Applications were not "completed applications" as required by the Medical Indigency Act. Therefore, the district court affirmed the Board's decision.[1] On April 11, 2014, the district court issued a final judgment.

Saint Alphonsus appeals to this Court. Kootenai Health and the Idaho Association of Counties, Inc. filed amicus curiae briefs.

### III. ISSUE ON APPEAL

1.    Whether the district court erred by affirming the Board's decision that the Applications were not "completed" as required by the Medical Indigency Act.

### IV. STANDARD OF REVIEW

"On an appeal from the district court, we review the decision of the district court to determine whether it correctly decided the issues presented to it." *Clear Springs Foods, Inc. v. Spackman*, 150 Idaho 790, 797, 252 P.3d 71, 78 (2011).

"A county's denial of an application for indigency benefits is reviewed under the Administrative Procedure Act, chapter 52, title 67, Idaho Code." *Sacred Heart Med. Ctr. v. Nez Perce Cnty. Comm'rs*, 138 Idaho 215, 216, 61 P.3d 572, 573 (2002). "Judicial review of an administrative order is limited to the record." *Shobe v. Ada Cnty., Bd. of Comm'rs*, 130 Idaho 580, 583, 944 P.2d 715, 718 (1997). The reviewing court shall affirm the agency action unless the agency's findings, inferences, conclusions, or decisions are:

> (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not

---

[1] The district court also made factual findings on T.A.'s and T.O.'s participation in the application process. The district court found that T.O. refused to sign the Application and refused to cooperate by providing any documents. The district court also found that T.A. did not appear at an interview with the county clerk. The district court reasoned that T.A.'s failure to appear at the interview made T.A.'s refusal to cooperate unclear. On appeal, Saint Alphonsus characterizes both T.A.'s and T.O's lack of participation as a refusal to sign the Applications. In its brief, the Board states that it does not dispute Saint Alphonsus's recitation of the facts.

supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3); *see E. Idaho Reg'l Med. Ctr. v. Ada Cnty. Bd. of Cnty. Comm'rs*, 139 Idaho 882, 883–84, 88 P.3d 701, 702–03 (2004). "A reviewing court may not substitute its judgment for that of the administrative agency on questions of fact, and will uphold an agency's finding of fact if supported by substantial and competent evidence." *In re Ackerman*, 127 Idaho 495, 496–97, 903 P.2d 84, 85–86 (1995). This Court exercises free review of interpretation of a statute. *St. Luke's Reg'l Med. Ctr., Ltd. v. Bd. of Comm'rs of Ada Cnty.*, 146 Idaho 753, 755, 203 P.3d 683, 685 (2009). "If the agency action is not affirmed, it shall be set aside, in whole or in part, and remanded for further proceedings as necessary." I.C. § 67-5279(3).

## V. ANALYSIS

Idaho's Medical Indigency Act (hereinafter "the Act"), codified at Title 31, Chapter 35 of the Idaho Code, "requires counties to contribute to the cost of providing necessary medical care to county residents who are indigent." *St. Luke's Magic Valley Reg'l Med. Ctr., Ltd. v. Bd. of Cnty. Comm'rs of Gooding Cnty.*, 150 Idaho 484, 486, 248 P.3d 735, 737 (2011) (citing I.C. § 31-3501). "In construing [the Act], this Court has stated that the legislature's general intent in enacting the medical indigency assistance statutes is twofold: to provide indigents with medical care and to allow hospitals to obtain compensation for services rendered to indigents." *St. Luke's Reg'l Med. Ctr.*, 146 Idaho at 755–56, 203 P.3d at 685–86 (quoting *Univ. of Utah Hosp. v. Ada Cnty. Bd. of Comm'rs*, 143 Idaho 808, 810, 153 P.3d 1154, 1156 (2007)) (internal quotation marks omitted).

"The county medically indigent program and the catastrophic health care cost program are payers of last resort. Therefore, applicants or third party applicants seeking financial assistance under the county medically indigent program . . . shall be subject to the limitations and requirements as set forth" in the Act. I.C. § 31-3501(2).[2] "'Applicant' means any person who is requesting financial assistance under this chapter." I.C. § 31-3502(1). A third party applicant is defined as:

> a person other than an obligated person[3] who completes, signs and files an application on behalf of a patient. A third party applicant who files an application

---

[2] Unless otherwise noted, all statutory citations will refer to the statutes in effect at the time Saint Alphonsus filed its Applications with the Board in 2013.

[3] "'Obligated person' means the person or persons who are legally responsible for an applicant." I.C. § 31-3502(19). The definition of "obligated persons" was amended after Saint Alphonsus submitted its Applications with the

on behalf of a patient pursuant to section 31-3504, Idaho Code, shall, if possible, deliver a copy of the application to the patient within three (3) business days after filing the application.

I.C. § 31-3502(26). In this case, there is no dispute that Saint Alphonsus was a third party applicant.

"[T]o qualify as a medical indigent, an individual or a third party on their behalf must complete, swear to, sign, and file an application[4] with the clerk of the county." *St. Luke's Reg'l Med. Ctr.*, 146 Idaho at 756, 203 P.3d at 686 (citing I.C. § 31-3504(1), (2)). An "application" is defined as "the combined application for state and county medical assistance pursuant to sections 31-3504 and 31-3503E, Idaho Code. In this chapter an application for state and county medical assistance shall also mean an application for financial assistance." I.C. § 31-3502(2). The Act also defines "completed application": "'Completed application' shall include at a minimum the cover sheet requesting services, applicant information including diagnosis and requests for services and signatures, personal information of the applicant, patient rights and responsibilities, releases and all other signatures required in the application." I.C. § 31-3502(7).[5] An overview of the application process follows.

Idaho Code section 31-3504 outlines the requirements of the application. Section (1) provides:

> Except as provided for in section 31-3503E, Idaho Code, an applicant or third party applicant requesting assistance under this chapter shall complete a written application. The truth of the matters contained in the completed application shall be sworn to by the applicant or third party applicant. The completed application shall be deemed consent for the providers, the hospital, the department, respective counties and board to exchange information pertaining to the applicant's health and finances for the purposes of determining medicaid eligibility or medical indigency. The completed application shall be signed by the applicant or third

addition of the following boldface language: "'Obligated person' means the person or persons who are legally responsible for an applicant **including, but not limited to, parents of minors or dependents**." Ch. 279, § 2, 2013 Idaho Sess. Laws 721, 723.

[4] Under the Act, the Idaho Department of Health and Welfare (the Department) has the authority to "[d]evelop and implement . . . in cooperation with the Idaho association of counties and the Idaho hospital association, a uniform form to be used for both the initial review, pursuant to [Idaho Code section 31-3503E, medicaid eligibility determination], and the application for financial assistance pursuant to section 31-3504, Idaho Code." I.C. § 31-3503C(4).

[5] The definition of "completed application" was amended after Saint Alphonsus submitted its Applications. The amendment added the following boldface language: "'Completed application' shall include at a minimum the cover sheet requesting services, applicant information including diagnosis and requests for services and signatures, personal and **financial** information of the applicant **and obligated person or persons**, patient rights and responsibilities, releases and all other signatures required in the application." Ch. 279, § 2, 2013 Idaho Sess. Laws 721, 722.

party applicant, an authorized representative of the applicant, or, if the applicant is incompetent or incapacitated, someone acting responsibly for the applicant and filed in the clerk's office.

I.C. § 31-3504(1). Section (2) of Idaho Code section 31-3504 recognizes: "If a third party completed application is filed, the application shall be presented in the same form and manner" as set forth in Section (1). I.C. § 31-3504(2).

Idaho Code section 31-3505 provides the time limits to file a "completed application." *See* I.C. § 31-3505(1)–(5). In addition, Section (6) states: "No application for financial assistance under the county medically indigent program or the catastrophic health care cost program shall be approved by the county commissioners or the board unless the provider or the hospital completes the application process and complies with the time limits prescribed by this section." I.C. § 31-3505(6).[6] Further, Section (7) provides: "Any application or request which fails to meet the provisions of this section, and/or other provisions of [the Act], shall be denied." I.C. § 31-3505(7).

"After receiving an application, the clerk conducts an interview and investigation, and files a statement of findings with the board." *St. Luke's Reg'l Med. Ctr.*, 146 Idaho at 756, 203 P.3d at 686 (citing I.C. § 31-3505A). "The clerk shall promptly notify the applicant, or third party filing an application on behalf of an applicant, of any material information missing from the application which, if omitted, may cause the application to be denied for incompleteness." I.C. § 31-3505A(1).

> The applicant and third party filing an application on behalf of an applicant to the extent they have knowledge, shall have a duty to cooperate with the clerk in investigating, providing documentation, submitting to an interview and ascertaining eligibility and shall have a continuing duty to notify the obligated county of the receipt of resources after an application has been filed.

I.C. § 31-3505A(2). "The board then makes an initial determination on the application." *St. Luke's Reg'l Med. Ctr.*, 146 Idaho at 756, 203 P.3d at 686 (citing I.C. § 31-3505C). The Board "shall approve an application for financial assistance if it determines that necessary medical services have been or will be provided to a medically indigent resident in accordance with [the Act]." I.C. § 31-3505B.

---

[6] In 2013, the legislature amended I.C. § 31-3505(6) by replacing the last word "section" with "chapter." Ch. 279, § 2, 2013 Idaho Sess. Laws 721, 727.

With this general overview of the application process in mind, we turn to the issue at hand. The single issue in this case is whether a third party's application for financial assistance is a "completed application" with signatures from only the third party applicant. The two relevant provisions for this issue are Idaho Code sections 31-3502(7) and 31-3504(1). Based on our interpretation of these statutes, we hold that a third party's application is a "completed application" with signatures from only the third party applicant. In other words, a third party's application does not require the signature of the patient to be "completed" under the Act.

"The objective of statutory interpretation is to give effect to legislative intent." *Idaho Youth Ranch, Inc. v. Ada Cnty. Bd. of Equalization*, 157 Idaho 180, 184, 335 P.3d 25, 29 (2014) (quoting *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007)). "Statutory interpretation begins with an examination of the literal words of a statute." *J & M Cattle Co. v. Farmers Nat. Bank*, 156 Idaho 690, 694, 330 P.3d 1048, 1052 (2014).

> Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Am. Bank v. Wadsworth Golf Constr. Co. of the Sw.*, 155 Idaho 186, 191, 307 P.3d 1212, 1217 (2013) (quoting *State v. Schulz*, 151 Idaho 863, 866, 264 P.3d 970, 973 (2011)).

Statutes that are in pari materia are construed together to effect legislative intent. *Gooding Cnty. v. Wybenga*, 137 Idaho 201, 204, 46 P.3d 18, 21 (2002).

> The rule that statutes in pari materia are to be construed together means that each legislative act is to be interpreted with other acts relating to the same matter or subject. Statutes are in pari materia when they relate to the same subject. Such statutes are taken together and construed as one system, and the object is to carry into effect the intention. It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions.

*Grand Canyon Dories v. Idaho State Tax Comm'n*, 124 Idaho 1, 4, 855 P.2d 462, 465 (1993) (quoting *Meyers v. City of Idaho Falls*, 52 Idaho 81, 89–90, 11 P.2d 626, 629 (1932)). This rule of statutory construction is particularly applicable here because we must read Idaho Code sections 31-3502(7) and 31-3504(1) together to give effect to the legislature's intent regarding the application requirements for third parties.

Construing the relevant language of these two provisions together as statutes in pari materia removes any ambiguity from the requirements of a "completed application." Idaho Code sections 31-3502(7) and 31-3504(1) plainly instruct that a determination of a "completed application" depends on the identity of the party submitting the application and the knowledge and ability of that party to respond to the inquiries and requests in the application. As stated above, Idaho Code section 31-3504(1) provides: "an applicant *or* third party applicant . . . shall complete a written application. The truth of the matters contained in the completed application shall be sworn to by the applicant *or* third party applicant. . . . The completed application shall be signed by the applicant *or* third party applicant . . . ." I.C. § 31-3504(1) (emphasis added). The use of the disjunctive word "or" throughout this statute demonstrates that the assessment of a "completed application" is dependent upon the identity of the party submitting the application: either the applicant *or* third party applicant must sign the application. The Act does not contemplate that both the applicant and third party applicant will sign the application. These qualifications from Idaho Code section 31-3504(1) must be taken into consideration when interpreting the definition of a "completed application" from Idaho Code section 31-3502(7). A "completed application" must contain at a minimum "the cover sheet requesting services, applicant information including diagnosis and requests for services and signatures, personal information of the applicant, patient rights and responsibilities, releases and all other signatures required in the application." I.C. § 31-3502(7). When reading this definition together with Idaho Code section 31-3504(1), it is clear that "applicant information including . . . requests for . . . signatures" does not require the signature of the applicant if the third party submits the application. Similarly, it is equally clear that "all other signatures required in the application" refers to the signatures required of the party submitting the application. Idaho Code sections 31-3502(7) and 31-3504(1), construed together, manifestly indicate that the party submitting the application must only provide its signature where requested on the application. The party submitting the application does not have to provide the signatures of any other individual or entity besides its own, even if the application requests those signatures in other parts of the document.

Based on our interpretation of the Act, we conclude that Saint Alphonsus's Applications, submitted as a third party applicant on behalf of T.O. and T.A., complied with the Act's signature requirements. If a third party submits an application for financial assistance, it is only

8

required to sign the pages of the application requesting its signature. A third party applicant does not need to provide the signature of the patient to submit a completed application.[7] Further, a third party does not need to provide its signature in lieu of the patient's, such as signing the patient's release or rights and responsibilities. A third party cannot sign the application for the patient nor is it required to do so. A third party application is "completed" when it is signed by the third party applicant in the parts of the document requesting its signature. Here, a representative of Saint Alphonsus signed the pages of the Applications requesting its signature. Saint Alphonsus, as a third party applicant, did not have to provide the signature of T.O. or T.A. or sign the pages requesting T.O.'s or T.A.'s signature. The signatures of the representative, alone, were sufficient for Saint Alphonsus to submit a "completed application" under the Act. The Board erred by denying the Applications for incompleteness due to the lack of signatures, and the district court erred by affirming the Board's decision.

## VI. CONCLUSION

We vacate the district court's judgment and remand for further proceedings consistent with this opinion. Costs on appeal to Appellant.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.

---

[7] Conversely, an indigent person filing a request for indigent benefits on his own behalf does not need to provide the signatures of the third party.