# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48781

ROBERT ERVIN PETERSON,

      Plaintiff-Appellant,

v.

DARRELL MICHAEL GUNDERSON,
in his official capacity as the Shoshone
County Sheriff,

      Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Filed: July 8, 2022

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the First Judicial District, State of Idaho, Shoshone County. Hon. Scott Wayman, District Judge.

Orders denying and granting summary judgment, <u>affirmed</u>.

Robert Ervin Peterson, Smelterville, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Robert Ervin Peterson appeals from the district court's orders denying his motion for summary judgment and granting the Shoshone County Sheriff's motion for summary judgment. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

At issue is whether the Sheriff was required to issue Peterson a concealed weapons license despite Peterson's prior felony conviction. The record in this case indicates that in the underlying criminal case, Peterson pled guilty in October 2006 to four felony counts of possessing material that sexually exploited children, Idaho Code § 18-1507A(2) (2006). Then, in May 2008, the district court heard Peterson's motions to reconsider and to withdraw his guilty plea. Following

1

that hearing, the court entered an order imposing a unified sentence of five years with two years determinate on each of the four counts to run consecutively for a total of twenty years with eight years determinate.[1]

In May 2020, Peterson filed an application with the Sheriff under I.C. § 18-3302(7) for a license to carry concealed weapons. Initially, the Sheriff denied Peterson's application, citing to a federal statute, 18 U.S.C. § 922. After several communications between Peterson and the Sheriff in which Peterson disputed the Sheriff's denial, Peterson received a copy of an August 2020 letter from the Shoshone County Chief Deputy Prosecuting Attorney providing a legal opinion to the Sheriff regarding "firearm possession by individuals convicted under I.C. § 18-1507A."

The letter noted that the legislature had repealed I.C. § 18-1507A in 2012 and that the current version of I.C. § 18-1507 prohibited the conduct previously prohibited under the repealed I.C. § 18-1507A. The letter opined the current version of I.C. § 18-1507 controlled Peterson's application for a concealed weapons license, concluding that "individuals seeking authorization to possess firearms who have been convicted for an offense under I.C. [§] 18-1507A prior to its repeal in 2012 should be treated as if the offense were a conviction under I.C. [§] 18-1507." The implication from this letter and its legal analysis was that the Sheriff declined to issue Peterson a concealed weapons license because Peterson's right to possess a firearm remained suspended under I.C. § 18-310(2). *See* I.C. § 18-310(2)(o) (providing convicted felon's right to possess firearm not restored upon final discharge if convicted under I.C. § 18-1507).[2]

In November 2020, Peterson filed a pro se action in the district court entitled "Petition to Enjoin Wrongful Denial of Concealed Carry License" and requested that the court order the Sheriff to issue Peterson a concealed weapons license. In his petition, Peterson disputed the Sheriff's legal analysis. Further, Peterson alleged that he had been convicted of violating I.C. § 18-1507A in

---

[1] No judgment of conviction stating Peterson's sentence in the underlying criminal case is in the appellate record in this case. Rather, the only indication of Peterson's sentence is the district court's May 2008 "Minute Entry & Order" issued following the court's hearing on Peterson's "Motion to Reconsider and Motion to Withdraw Guilty Plea."

[2] Effective July 1, 2022, Idaho Code § 18-310(2)(o), which provides that a convicted felon's right to possess a firearm is not restored upon final discharge from his sentence if he was convicted under I.C. § 18-1507, was amended to I.C. § 18-310(2)(n). *See* 2022 Idaho Laws Ch. 124 (S.B. 1325) (amending I.C. § 18-310(2)). Because the district court addressed Peterson's claim before this amendment, we cite to I.C. § 18-310(2)(o) in this opinion.

2006; he had "successfully and satisfactorily completed the prescribed term of imprisonment in February 2016"; and upon this "final discharge" from his sentence, I.C. § 18-310(2) restored all his civil rights, including his right to possess a firearm, "as a function of law."

Peterson mailed a copy of his petition and summons to the Sheriff rather than serving process on the Sheriff. *See* I.R.C.P. 4(d)(1) (noting proper methods of service). As a result, the Sheriff did not answer the petition but rather only entered a "special notice of appearance." Thereafter, the parties filed several anomalous filings that did not comport with the Idaho Rules of Civil Procedure. Peterson moved for "summary judgment" because the Sheriff had failed to answer the petition. The district court denied that motion. Despite this denial, the Sheriff filed an "objection" to Peterson's "summary judgment" motion, asserting Peterson had failed to serve his petition properly. Peterson then responded to this "objection," and the court again denied Peterson's requested relief.

Despite these denials and the absence of another summary judgment motion from Peterson, the Sheriff filed a "Response to Motion for Summary Judgment" and a supporting declaration. In this response, the Sheriff asserted, among other things, that Peterson was disqualified from possessing a firearm under 18 U.S.C. § 922(g)(1); Peterson had failed to present evidence that he had satisfactorily completed his sentence as necessary to restore his full rights of citizenship under I.C. § 18-310(2); regardless, the 2012 amendment of I.C. § 18-1507 incorporated the crime of which Peterson had previously been convicted under I.C. § 18-1507A (2006), thereby preventing the automatic restoration of his civil rights under I.C. § 18-310(2)(o); and the law prohibiting Peterson's right to possess a firearm did not violate the ex post facto doctrine. Peterson then filed a "response" to the Sheriff's response.

In February 2021, the district court held a hearing during which it stated the hearing's purpose was to address Peterson's motion for summary judgment. Following the parties' arguments, the court orally ruled. The court stated it was applying the summary judgment standards under Rule 56 of the Idaho Rules of Civil Procedure. It denied Peterson's request to strike the Sheriff's filings as untimely, concluding the timing of the filings did not prejudice Peterson.[3] Then, the court considered whether Peterson's petition was "a request to have a writ of

---

[3]     On appeal, Peterson challenges the district court's denial of his request to strike the Sheriff's response and supporting declaration. Peterson argues the Sheriff did not timely serve these documents in compliance with I.R.C.P. 56(b)(2). Peterson, however, fails to address the

mandate" or, alternatively, a petition for "judicial review." Ultimately, the court noted "some procedural problems" with the case, appeared to conclude a writ of mandate was an inappropriate procedure, but did not reach a conclusion on the nature of the action.

Addressing the merits of Peterson's petition, the district court concluded it was undisputed that Peterson had been convicted of "multiple felony offenses" that were "all punishable by terms exceeding one year" and that he had "served his sentence and done his time and taken care of all that." The court then concluded that Peterson was disqualified from possessing a firearm under 18 U.S.C. § 922(g)(1) and that, as a result, he was disqualified under Idaho law from possessing a firearm:

> [T]he basic fact still remains that because the offenses were punishable by more than one year, and were disqualifying under federal law, and if disqualified under federal law, it's a disqualification under State law. And that is the situation [Peterson] has found himself in.

Further, the court rejected Peterson's ex post facto argument, concluding that "the right to possess a firearm is not an absolute right"; "a restriction on a person's right to have a firearm license" is not punitive; and the "issuance of a license" is "a civil proceeding," not "a criminal proceeding." Thereafter, the court entered an order denying summary judgment for Peterson, a separate order granting summary judgment for the Sheriff, and a judgment on both orders.

Peterson, proceeding pro se, timely appeals.

## II.

## STANDARD OF REVIEW

### A.    Nature of Case

As an initial matter, we address the nature of Peterson's petition, which dictates this Court's standard of review. Although the district court noted "procedural problems" with the parties' filings and considered the nature of Peterson's petition, it did not reach a specific conclusion on the issue. For example, the court considered whether Peterson's petition was a request for a "writ of mandate." It appeared to reject this notion, however. The court also considered whether Peterson's petition was a petition for "judicial review," stating that an "Idaho administrative

---

court's ruling amending the timelines and concluding the timing of the filings did not prejudice Peterson. *See* I.R.C.P. 56(b)(3) (providing court may alter or shorten deadlines for good cause shown). Accordingly, we do not address Peterson's argument that the court should have stricken the Sheriff's filings. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997) (ruling party waives issue if argument is lacking).

4

procedures appeals action, also commonly referred to as judicial review" is "another available remedy." Ultimately, however, the court addressed the merits by construing the parties' filings as cross-motions for summary judgment, as evidenced by its order construing the Sheriff's "objection and written response" as a summary judgment motion and granting that motion.

Peterson does not directly address the Court's standard of review. Although his opening brief has numerous sections entitled "standard of review," he misconstrues the meaning of that phrase. He does assert, however, that this appeal addresses the denial of a summary judgment motion governed by I.R.C.P. 56; the district court "erred in ruling [his petition] was actually a request for a Writ of Mandamus";[4] and his petition was "authorized and described by I.C. § 18-3302(18)." In support, Peterson quotes I.C. § 18-3302(18), which provides that "a civil action may be brought to enjoin a wrongful refusal to issue a license . . . ." Meanwhile, the Sheriff assumes without analysis that this Court is addressing a decision denying a writ of mandate and asserts the Court's review is limited to determining whether Peterson had a clear legal right to the relief sought.

Because Peterson's petition cites I.C. § 18-3302(18) and because that provision specifically allows an applicant to bring a civil action to enjoin a wrongful refusal to issue a concealed weapons license, we construe Peterson's petition as a complaint asserting a private right of action and seeking injunctive relief. *See Yoakum v. Hartford Fire Ins. Co.*, 129 Idaho 171, 176, 923 P.2d 416, 421 (1996) (recognizing statutory law creates private right of action by providing for "an express civil remedy"). We do not construe the petition, as the Sheriff proposes, as a request for a writ of mandate. Accordingly, we apply the summary judgment standard of review under I.R.C.P 56 for purposes of resolving a summary judgment motion. Additionally, because the district court construed the parties' filings as cross-motions for summary judgment, we review them as such.

## B.    Summary Judgment Standard

On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). Summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any,

---

[4]    Idaho Code § 7-301 provides that the terms "writ of mandamus" and "writ of mandate" are interchangeable.

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56(c). The movant has the burden of showing that no genuine issues of material fact exist. *Stoddart v. Pocatello Sch. Dist. No. 25*, 149 Idaho 679, 683, 239 P.3d 784, 788 (2010). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000).

Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(d). *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994). Disputed facts and reasonable inferences are construed in favor of the nonmoving party. *Castorena v. Gen. Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010). This Court freely reviews issues of law. *Cole v. Kunzler*, 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct. App. 1989).

That the parties have filed cross-motions for summary judgment does not change the applicable standard of review. *Intermountain Forest Mgmt., Inc. v. La. Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001). Where the parties have filed cross-motions for summary judgment relying on the same facts, issues and theories, the parties effectively stipulate there is no genuine issue of material fact precluding summary judgment. *Id.* That both parties move for summary judgment, however, does not in and of itself establish that there is no genuine issue of material fact. *Id.*

### C.     Statutory Interpretation

Peterson's appeal turns on an analysis of a statutory scheme governing the issuance of a concealed weapons license. The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011). Such interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). It is well established that where statutory language is unambiguous, legislative history and other extrinsic

evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature. *Id.* Only where a statute is capable of more than one conflicting construction is it said to be ambiguous and invoke the rules of statutory construction. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 743, 40 P.3d 96, 101 (2002). If it is necessary for this Court to interpret a statute because an ambiguity exists, then this Court will attempt to ascertain legislative intent and, in construing the statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Irwin*, *P.A. v. State Ins. Fund*, 134 Idaho 130, 134, 997 P.2d 591, 595 (2000). Where the language of a statute is ambiguous, constructions that lead to absurd or unreasonably harsh results are disfavored. *See Jasso v. Camas Cty.*, 151 Idaho 790, 798, 264 P.3d 897, 905 (2011). Constitutional issues are questions of law over which this Court exercises free review. *State v. Johnson*, 152 Idaho 41, 43, 266 P.3d 1146, 1148 (2011).

## III.

## ANALYSIS

### A.    Denial of Application for Concealed Weapons License

Peterson challenges the district court's denial of his summary judgment motion, arguing the Sheriff was required to issue him a concealed weapons license. Peterson asserts the court "erred by relying solely only 18 U.S.C. § 922(g)(1)" and failing to consider Idaho law in determining his right to possess a firearm. The Sheriff acknowledges Idaho law applies to determine Peterson's right, noting 18 U.S.C. § 921 provides that "any conviction . . . for which a person . . . has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." Further, the Idaho Supreme Court has noted that to determine whether a defendant has a disqualifying conviction under 18 U.S.C. § 922(g), courts must look to state law. *In re Order Certifying Question to Supreme Court of Idaho*, 169 Idaho 135, 137, 492 P.3d 1094, 1096 (2021). Accordingly, whether the Sheriff was required to issue Peterson a concealed weapons license turns on whether Idaho law automatically restored Peterson's previously suspended right to possess a firearm. This analysis requires construing together I.C. §§ 18-310; 18-1507; and 18-3302. *See Saint Alphonsus Reg'l Med. Ctr. v. Elmore Cty.*, 158 Idaho 648, 653, 350 P.3d 1025, 1030 (2015) (noting statutes "in pari materia," meaning relating to same matter or subject matter, are construed together as "one system").

7

Idaho Code § 18-3302 authorizes a county sheriff to issue a concealed weapons license to persons who are *not* disqualified to possess a firearm. It provides, in relevant part, that:

> The sheriff of a county, on behalf of the state of Idaho, must, within ninety (90) days after the filing of a license application by any person *who is not disqualified* as provided herein *from possessing* or receiving *a firearm under state or federal law*, issue a license to the person to carry concealed weapons on his person within this state.

I.C. § 18-3302(7) (emphasis added).

Regarding persons who are disqualified from receiving a concealed weapons license, I.C. § 18-3302(11) identifies numerous categories of persons to whom a license "shall not be issued." Relevant to this appeal, these categories include a person who has "been adjudicated guilty in any court of a crime punishable by imprisonment for a term exceeding one (1) year." I.C. § 18-3302(11)(c). Even if a person is "disqualified" under I.C. § 18-3302(11), however, an applicant may be eligible to receive a concealed weapons license if his right to possess a firearm has been restored. Specifically, I.C. § 18-3302(12) provides that, in making an eligibility determination for a license, a sheriff "shall not consider" a "conviction, guilty plea or adjudication [if] the applicant's civil right to bear arms either specifically or in combination with other civil rights has been restored under operation of law or legal process."

Idaho Code § 18-310 governs both the suspension and restoration of civil rights of a convicted felon, including the right to possess a firearm. It provides in relevant part that "a sentence of custody to the Idaho state board of corrections suspends all of the civil rights of a person so sentenced." I.C. § 18-310(1). Regarding the restoration of civil rights, I.C. § 18-310(2) generally provides that "upon final discharge a person convicted of any Idaho felony shall be restored the full rights of citizenship." "Final discharge" means the "satisfactory completion of imprisonment, probation and parole." *Id*. Excluded from this general rule, however, are persons convicted of certain enumerated offenses identified in I.C. § 18-310(2). Among these enumerated offenses is a conviction for violating I.C. § 18-1507, which prohibits the sexual exploitation of a child. I.C. § 18-310(2)(o). If a person has been convicted of violating I.C. § 18-1507, his right to possess a firearm is not automatically restored upon final discharge of his sentence. *Id*. Rather, such a person may apply to the commission of pardons and parole for the restoration of the right to possess a firearm. I.C. § 18-310(3).

Assuming for purposes of this appeal that Peterson was finally discharged from his sentence for his 2006 conviction,[5] his right to possess a firearm has not been automatically restored under the plain language of the statutory scheme at the time of his application in 2020 for a concealed weapons license. Undisputedly, Peterson was convicted of an offense punishable by more than one year of imprisonment. *See* I.C. § 18-1507A (2006) (imposing sentence of up to five years); I.C. § 18-3302(11)(c) (providing license shall not issue to person adjudicated guilty of crime punishable by imprisonment for more than one year). As a result, Peterson's right to possess a firearm was suspended under I.C. § 18-310(1). *See* I.C. § 18-310(1) (suspending all civil rights of person sentenced to custody of board of correction). Peterson's right to possess a firearm was not automatically restored upon his final discharge, however, because he was convicted of conduct identified in an enumerated offense under I.C. § 18-310(2), namely the sexual exploitation of a child under I.C. § 18-1507 (2012). *See* I.C. § 18-310(2)(o) (identifying I.C. § 18-1507 prohibiting sexual exploitation of child as disqualifying offense).

On appeal, Peterson argues a statutory scheme, which includes I.C. § 18-1507 (2012), is inapplicable to him. Rather, he asserts the Sheriff was required to consider his conviction under I.C. § 18-1507A (2006), which was not an enumerated offense under I.C. § 18-310(2) in 2006 when he pled guilty. At that time, I.C. § 18-1507A (2006) prohibited the "possession of sexually exploitative material for other than a commercial purpose." In contrast, I.C. § 18-1507 (2006)

---

[5] Whether Peterson was finally discharged from his sentence appears to be an unresolved genuine issue of material fact. "Final discharge" means "satisfactory completion of imprisonment, probation and parole." I.C. § 18-310(2). In Peterson's unverified petition, he only alleged he "successfully and satisfactorily completed the prescribed term of *imprisonment* in February 2016" (emphasis added). He alleges nothing about whether he has completed parole. The Sheriff challenged Peterson's "final discharge" allegation before the district court, asserting Peterson failed to establish he satisfactorily completed his sentence as required by I.C. § 18-310(2) to restore his right to possess a firearm. Additionally, the Sheriff submitted to the court an order in the underlying case imposing a unified sentence of five years with two years determinate on each of the four counts for violating I.C. § 18-1507A (2006) to run consecutively for a total sentence of twenty years with eight years determinate. Under this sentence, that Peterson had not satisfactorily completed his parole is possible because he applied for a concealed weapons license before 2026-- the expiration of twenty years after his judgment of conviction in 2006. Despite Peterson's failure to establish he completed parole as required for "final discharge," the court ruled that it was undisputed Peterson had "served his sentence and done his time and taken care of all that." The Sheriff does not challenge this ruling on appeal. Accordingly, our analysis assumes Peterson has satisfactorily completed parole.

9

prohibited "the commercial sexual exploitation of children." In 2012, however, the legislature repealed I.C. § 18-1507A (2006) and simultaneously amended I.C. § 18-1507 to include the offense previously codified under I.C. § 18-507A (2006), i.e., noncommercial exploitation of children. I.C. § 18-1507(2)(a) (2012) (providing that "a person commits sexual exploitation of a child if he knowingly and willfully . . . [p]ossesses or accesses through any means including, but not limited to, the internet, any sexually exploitative material"). As a result of this 2012 amendment, the offense of sexual exploitation of children for other than a commercial purpose is now an enumerated offense under I.C. § 18-310(2) for which the right to possess a firearm is not automatically restored. Accordingly, Peterson asserts the 2012 amendment of I.C. § 18-1507 should not apply to determine whether the Sheriff must issue him a concealed weapons license. Peterson, however, provides no legal analysis or citation to any legal authorities supporting his assertion that the repealed I.C. § 18-1507A (2006) applies--other than his assertion that applying I.C. § 18-1507 (2012) violates the ex post facto doctrine. We hold that the statutory scheme-- including the application of I.C. § 18-1507 (2012) in this case--does not violate the ex post facto doctrine.

Article I, § 10, clause 1 of the United States Constitution prohibits a state from passing an ex post facto law. Similarly, Article I, § 16 of the Idaho Constitution prohibits the passage of any ex post facto law.[6] "Among other things, the ex post facto doctrine prohibits a state from retroactively increasing the punishment for criminal acts." *Zivkovic v. State*, 150 Idaho 783, 788, 251 P.3d 611, 616 (Ct. App. 2011). Whether a statutory scheme is civil or criminal is a question of statutory construction. *Smith v. Doe*, 538 U.S. 84, 92 (2003). A court first considers the legislation's text and structure to determine whether its objective is to punish. *Id.* A restriction incident to the State's power to protect the health and safety of its citizens evidences an intent to exercise regulatory power and not to punish. *Id.* at 93-94. If the legislature intended punishment, the legislation violates the ex post facto doctrine and the inquiry ends. *Id.* at 92-93. If the legislature intended a civil proceeding, however, the court considers whether the punitive effects of the statutory scheme negate that intent. *Id.* Those effects include whether a statutory scheme

---

[6]    Idaho appellate courts have not recognized a difference in the scope of analysis between the ex post facto provisions in the United States Constitution and the Idaho Constitution. *Zivkovic v. State*, 150 Idaho 783, 789, 251 P.3d 611, 617 (Ct. App. 2011); *State v. Gragg*, 143 Idaho 74, 75-76, 137 P.3d 461, 462-63 (Ct. App. 2005). Peterson cites no authority otherwise. Accordingly, for purposes of our analysis, we consider the two constitutional provision as coextensive.

"has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Id.* at 97; *see also Johnson*, 152 Idaho at 43, 266 P.3d at 1148 (identifying analysis); *State v. Gragg*, 143 Idaho 74, 76, 137 P.3d 461, 463 (Ct. App. 2005) (same). Because courts defer to the legislature's stated purpose, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Johnson*, 152 Idaho at 44, 266 P.3d at 1149 (quoting *Smith*, 538 U.S. at 92).

Applying this analysis and construing I.C. §§ 18-310, 18-1507, and 18-3302 together, we conclude the statutory scheme in Idaho for the issuance of a concealed weapons license evidences an intent to exercise regulatory power and not to punish. *See Smith*, 538 U.S. at 92-93 (noting a restriction to protect health and safety is intent to exercise regulatory power not to punish); *Saint Alphonsus Reg'l Med. Ctr.*, 158 Idaho at 653, 350 P.3d at 1030 (noting statutes "in pari materia," meaning relating to same matter or subject matter, are construed together as "one system"). The legislature expressly found it has "the authority to regulate the carrying of weapons concealed." I.C. § 18-3302(1); *see also* Idaho Const. art. I, § 11 (granting legislature authority to pass laws governing carrying of concealed weapons). In doing so, the legislature excluded a person's right to possess a firearm if convicted of certain enumerated offenses from automatic restoration. *See* I.C. § 18-310(2)(a)-(ii) (identifying offenses excluded from automatic restoration). The United States Supreme Court has held that the ex post facto clause "does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences" and has "upheld against [ex post facto] challenges laws imposing regulatory burdens on individuals convicted of crime without any corresponding risk assessment." *Smith*, 538 U.S. at 103-04; *see also District of Columbia v. Heller*, 554 U.S. 570, 627 n.26 (2008) (characterizing longstanding prohibitions such as ban on felons' possession of firearms as "presumptively lawful regulatory measures"). Accordingly, the legislature intended the Idaho statutory scheme governing the issuance of a concealed weapons license to be a civil proceeding exercising regulatory power and not a punishment.

We also conclude the effects of this statutory scheme are not punitive. As this Court has previously ruled:

11

> The regulation of guns in the hands of previously convicted felons is designed to accomplish a nonpunitive public purpose--to keep firearms out of the hands of persons who, having been convicted of felonies, may have a greater likelihood than other citizens to misuse firearms.

*Zivkovic*, 150 Idaho at 788, 251 P.3d at 616; *see also Heller*, 554 U.S. at 626-27 (noting "longstanding prohibitions on the possession of firearms by felons"). Accordingly, the statutory scheme has a rational connection to a nonpunitive purpose.

Further, the statutory scheme is not retroactive. Rather, it only prohibits Peterson's current and future possession of a firearm; it does not increase Peterson's punishment for his 2006 conviction. *See United States v. Mitchell*, 209 F.3d 319, 322-23 (4th Cir. 2000) (holding prohibition against possessing firearm enacted after conviction did not violate ex post facto doctrine); *Corcoran v. Sessions*, 261 F. Supp. 3d 579, 601-02 (D. Md. 2017) (same); *Martin v. Commonwealth*, 770 S.E.2d 795, 797 (Va. Ct. App. 2015) (ruling retroactive categorization of conviction to enhance penalty for subsequent crime did not violate ex post facto doctrine). Finally, that the statutes governing a sheriff's obligation to issue a concealed weapons license, I.C. § 18-3302, and providing for suspension and restoration of civil rights, I.C. § 18-310, are contained in Title 18 of the Idaho Code, entitled "Crimes and Punishments" does not transform the statutory scheme into a punishment. As the United States Supreme Court has ruled, "the location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." *Smith*, 538 U.S. at 94; *see also Gragg*, 143 Idaho at 77, 137 Idaho at 464 (noting same).

In support of his assertion that the statutory scheme is "intended to be part of the punishment for a criminal offense" that violates the ex post facto doctrine, Peterson cites *Allen v. Illinois*, 478 U.S. 364 (1986). In that case, the United States Supreme Court considered whether an Illinois civil proceeding allowing the State to petition to have a person declared sexually dangerous was criminal for purposes of guaranteeing his Fifth Amendment privilege against compulsory self-incrimination. *Id.* at 366-67. The Court stated the issue was one of statutory construction, noted the statute expressly stated it was civil in nature, and considered whether the statute was so punitive in either purpose or effect to negate the State's intention that the statute be civil in nature. *Id.* at 368-69. Applying this analysis, the Court concluded the civil proceeding was not criminal within the meaning of the Fifth Amendment. *Id.* at 374.

Contrary to Peterson's assertion, *Allen* provides no support for the proposition that the Sheriff was required to consider I.C. § 18-1507A (2006) rather than I.C. § 18-1507 (2012) for

purposes of determining whether to issue Peterson a concealed weapons license under I.C. § 18-3302. Although the Court in *Allen* analyzed the statute at issue under a two-part inquiry similar to the inquiry applicable for determining whether a statute violates the ex post facto doctrine--i.e., whether the legislation was intended to be civil and whether the punitive effects of the statute negated that intent--*Allen* has no applicability to the issue in this case. Likewise, Peterson's reliance on *United States v. Ward*, 448 U.S. 242 (1980), is inapplicable for the same reason *Allen* is. Like *Allen*, *Ward* addresses whether a proceeding for the assessment of a civil penalty is a criminal proceeding within the Fifth Amendment's guarantee against compulsory self-incrimination. *Id*. at 244.

**B.      Peterson's Challenge to his Underlying Convictions**

As an alternative argument, Peterson requests that this Court "vacate the underlying conviction" because his guilty plea was not knowing, intelligent, and voluntary and because he was denied his Sixth Amendment right to counsel. Peterson, however, failed to raise these issues before the district court. *See Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991) (ruling issues not raised before trial court generally may not be considered on appeal). Moreover, the court lacked jurisdiction to consider a request to withdraw Peterson's guilty plea. "Absent a statute or rule extending its jurisdiction, the trial court's jurisdiction to amend or set aside a judgment expires once the judgment becomes final, either by expiration of the time for appeal or affirmance of the judgment on appeal." *State v Jakoski*, 139 Idaho 352, 355, 79 P.3d 711, 714 (2003). Accordingly, the district court lacked jurisdiction to vacate Peterson's conviction.

## IV.
## CONCLUSION

The district court did not err by denying Peterson's summary judgment or by granting the Sheriff's summary judgment. Accordingly, we affirm the district court's judgment in favor of the Sheriff.

Judge GRATTON and Judge HUSKEY **CONCUR**.

13